Zachary M. Crosner (SBN 272295)
Chad A. Saunders (SBN 257810)
Craig Straub (SBN 249032)
**CROSNER LEGAL, P.C.**
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
zach@crosnerlegal.com
chad@crosnerlegal.com
craig@crosnerlegal.com

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Thomas E. Wheeler (SBN 308789)
Meghan E. George (SBN 274525)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Tel: (323) 306-4234
Fax: (866) 633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
twheeler@toddflaw.com
mgeorge@toddflaw.com

*Attorneys for Plaintiff, and all others similarly situated*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| BRIAN HEINZ individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC. and DOES 1 to 10, inclusive, and each of them,<br><br>        Defendants. | Case No. 2:23-cv-00282-WBS-AC<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT AMAZON.COM, INC'S MOTION TO TRANSFER OR, IN THE ALTERNATIVE, DISMISS**<br><br>Date: July 10, 2023<br>Time: 1:30 p.m.<br>Dept.: Courtroom 5<br><br>Assigned to the Hon. William B. Shubb<br><br>Action Filed: January 11, 2023<br>Action Removed: February 15, 2023<br><br>**JURY TRIAL DEMANDED** |

1

## TABLE OF CONTENTS

2    I.          INTRODUCTION ..................................................................................1

3    II.        STATEMENT OF FACTS .......................................................................3

4         A.    Heinz's Claims................................................................................3

5         B.    Amazon's Alleged Venue Selection Agreement .............................3

6    III.       THE MOTION TO TRANSFER SHOULD BE DENIED.....................4

7         A.    Heinz Did Not Agree to Amazon's "Conditions of Use" or Privacy Notice...........4

8               1.    Amazon's Website Display Screens at Issue ................................4

9               2.    Amazon Fails to Establish the Threshold Issue of Contract

10                    Formation ....................................................................................5

11         B.    The Forum-Selection Clause Waives Heinz's Fundamental Rights and is Invalid ....................................................................10

12               1.    The Standards for Enforcing a Forum Selection Clause............10

13               2.    The Forum Selection and Choice-of-Law Clauses Must be

14                    Considered Together ...................................................................11

15               3.    Amazon Has Failed to Meet its Burden Showing the Forum Selection and Choice-of-Law Clauses Do Not Diminish Heinz's

16                    Substantive Rights .....................................................................11

17               4.    The Wholesale Waiver of CIPA and Right to A Jury Trial Constitute an Extraordinary Circumstance Justifying the Denial of Transfer ...........14

18         C.    Amazon's COUs Contain Several Unconscionable Clauses ................................15

19    IV.       AMAZON'S MOTION TO DISMISS SHOULD BE DENIED ..........................16

20         A.    Heinz's CIPA Claims Should be Upheld .................................................16

21               1.    Amazon's Vague Privacy Notice is Not Conspicuous, and Does Not

22                    Comply with CIPA ...................................................................17

23               2.    A Customer Service Chat on a Cellular Telephone Carries the Same Expectation of Privacy as a Customer Service Telephone Call.................19

24               3.    Amazon Intentionally Recorded Heinz's Chat Transcripts .......................24

25         B. Heinz's UCL Unlawful Prong Claim for Injunctive Relief Should be Upheld ...........25

26    V.        CONCLUSION.....................................................................................25

27

28

# TABLE OF AUTHORITIES

**CASES**

*A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630 (4th Cir. 2009)................................. 10

*Adler v. Fred Lind Manor*, 153 Wn. 2d 331 (Wash. 2004) ...................................................... 12

*Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454 (S.D.N.Y. 2017) ................................................ 8

*Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49 (2013) ("*Atl. Marine*")... 10, 14

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ............................... passim

*Brack v. Omni Loan Co., Ltd.*, 164 Cal. App. 4th 1312 (2008).................................................. 12

*Brinkley v. Monterey Fin. Servs., LLC*, No. 16-cv-1103-WQH-WVG,
    2019 U.S. Dist. LEXIS 160065, 2019 WL 4295327 (S.D. Cal. May 6, 2019)....................... 13

*Campbell v. Facebook Inc.*, 77 F.Supp.3d 836 (N.D. Cal. 2014)............................................... 23

*Colgate v. Juul Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019)............................................... 8

*Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014)............................................. 25

*Deteresa v. ABC*, 121 F.3d 460 (9th Cir. 1997)....................................................................... 22

*DIRECTV, Inc. v. EQ Stuff, Inc.*, 207 F. Supp. 2d 1077 (C.D. Cal. 2002) ................................. 15

*Doe 1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009) ................................................................. 11

*Erceg v. LendingClub Corp.*, 475 F. Supp. 3d 1071 (N.D. Cal. 2020) ...................................... 13

*Evens v. Superior Court*, 77 Cal. App. 4th 320 (1999) ........................................................... 23

*Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051 (S.D. Cal. 2015) ................................ 13

*Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002) ....................................................... 2, 19, 22

*Friddle v. Epstein*, 16 Cal. App. 4th 1649 (1993)......................................................... 18, 22

*Garner v. Amazon.Com, Inc.*, 603 F. Supp. 3d 985 (W.D. Wash. 2022).................................... 13

*Grafton Partners v. Superior Court*, 36 Cal. 4th 944 (Cal. 2005).............................................. 12

*Hall v. Superior Court*, 150 Cal. App. 3d 411 (1983) .............................................................. 11

*Handoush v. Lease Fin. Grp., LLC*, 41 Cal. App. 5th 729 (2019)............................................... 12

*In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ............................... 19

*In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580-WHO,

2022 U.S. Dist. LEXIS 230754, 2022 WL 17869218 (N.D. Cal .2022) .................................. 23

*In re Yahoo Mail Litig.*, 308 F.R.D. 577 (N.D. Cal. 2015) ............................................................ 13

*Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050 (2005) ............................. 25

*Javier v. Assurance IQ, LLC*, No. 21-16351,

2022 U.S. App. LEXIS 14951, 2022 WL 1744107 (9th Cir. May 31, 2022) .......................... 19

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) .................................................... 10

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006) ........................................... passim

*Kight v. Cashcall*, 200 Cal. App. 4th 1377 (2011) ................................................................. 2, 18

*Koresko v. RealNetworks, Inc.*, 291 F. Supp. 2d 1157 (E.D. Cal. 2003) ..................................... 10

*Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764 (9th Cir.1991) ....................... 14

*Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855 (2016) .............................................. 6, 9

*Lueck v. Sundstrand*, 236 F.3d 1137 (9th Cir. 2001) .................................................................. 14

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ..................................................... 10, 11

*Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549 (9th Cir. 2010) ............................... 25

*Meyers v. Alphabet, Inc.*, No. CV 21-1767 FMO (MAAx),

2022 U.S. Dist. LEXIS 98298 (C.D. Cal. Feb. 14, 2022) ........................................................ 7

*Mezger v. Bick*, 280 Cal. App. 5th 76 (2021) ............................................................................. 22

*Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133 (9th Cir. 2004) ................................................ 11

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ..................................... 1, 6, 7, 17

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016) .......................................................... 9

*Nutracea v. Langley Park Invs. PLC*, No. 2:06-cv-2019-MCE-DAD,

2007 U.S. Dist. LEXIS 6438, 2007 WL 135699 (E.D. Cal. Jan. 16, 2007) ........................... 10

*People v. Drennan*, 84 Cal. App. 4th 1349 (2000) ..................................................................... 22

*People v. Super. Ct. (Smith)*, 70 Cal. 2d 123 (1969) ................................................................... 25

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ...................................................................... 14

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,

214 F. Supp. 3d 808 (N.D. Cal. 2016) ................................................................................... 23

*Raffin v. Medicredit, Inc.*, No. CV 15-4912-GHK (PJWx),

    2017 U.S. Dist. LEXIS 5311, 2017 WL 131745 (C.D. Cal. Jan 3, 2017) ................................ 21

*Regan v. Pinger, Inc.*, No. 20-cv-02221-LHK (SVK),

    2020 U.S. Dist. LEXIS 250986 (N.D. Cal. July 21, 2020) ............................................................ 9

*Ribas v. Clark*, 38 Cal. 3d 355 (1985) ............................................................................................ 22

*Rosskamm v. Amazon.com, Inc.* No. 1:22-CV-01445,

    2022 U.S. Dist. LEXIS 197046, 2022 WL 16534539 (N.D. Ohio Oct. 27, 2022) .................... 9

*Schumacher v. Amazon.com LLC*, 2012 WL 13036856 (C.D. May 29, 2012) ............................ 10

*Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367 (S.D. Fla. 2011) ............................................ 10

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021) .................................................. 1, 6, 7, 17

*Shultz v. TTAC Publ'g, LLC*, No. 20-cv-04375-HSG,

    2020 U.S. Dist. LEXIS 198834 (N.D. Cal. Oct. 26, 2020) ...................................................... 7, 8

*Smith v. LoanMe, Inc.*, 11 Cal. 5th 183 (2021) ...................................................................... 22, 23

*Specht v. Netscape Communs. Corp.*, 306 F.3d 17 (2d Cir. 2002) ................................................ 6

*Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163 (9th Cir. 2006) ....................................... 14

*Verdugo v. Alliantgroup, L.P.*, 237 Cal. App. 4th 141 (2015) ..................................................... 11

*White v. Trans Union, LLC*, 462 F. Supp. 2d 1079 (C.D. Cal. 2006) .......................................... 25

*Williams v. DDR Media, LLC*, No. 22-cv-03789-SI,

    2023 U.S. Dist. LEXIS 33319 (N.D. Cal. Feb. 28, 2023) ............................................................ 7

*Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873 (N.D. Ill. 2020) .......................... 8

*Wimsatt v. Beverly Hills Weight etc. Internat., Inc.*, 32 Cal. App. 4th 1511 (1995) .................... 11

*Zaklit v. Nationstar Mortgage LLC*, No. 5:15-cv-2190-CAS(KKx),

    2017 U.S. Dist. LEXIS 117341, 2017 WL 3174901 (C.D. Cal. July 24, 2017)....................... 21

**STATUTES**

Cal Penal Code § 637.2 .................................................................................................................. 13

Cal. Const., art. I, § 1 ............................................................................................................. 12, 14

Cal. Penal Code § 630 .................................................................................................................. 20

Cal. Penal Code § 632 ................................................................................... 20

Cal. Penal Code § 632.7 ................................................................................ 22

California Civil Code § 3513 ......................................................................... 12

California Invasion of Privacy Act, Cal. Penal Code §§ 630 *et seq.* ("CIPA") ...................... passim

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") ............. 3

Wash. Rev. Code § 9.73.060 .......................................................................... 13

Washington Privacy Act, Wash. Rev. Code §§ 9.73.060 *et seq.* ("WPA") ................................ 13

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 15 ................................................................ 25

1   Plaintiff Brian Heinz ("Heinz") submits this opposition to Defendant Amazon.com, Inc.'s

2   ("Defendant" or "Amazon") motion to transfer or, in the alternative, dismiss (ECF No. 24) ("Mtn.").

3   The declaration of Brian Heinz ("Heinz Decl.") and Craig W. Straub ("Straub Decl.") in support of

4   this opposition are concurrently filed.

5   **I.    INTRODUCTION**

6   Heinz brings this action on behalf of himself and other Californians for Amazon's illegal

7   recording of electronic conversations with consumers without their knowledge and consent. Heinz

8   alleges this practice violates California's Invasion of Privacy Act, Cal. Penal Code §§ 630 *et seq*.

9   ("CIPA"). Amazon seeks to transfer this case arguing all users of its website have affirmatively

10  consented to hidden and lengthy Conditions of Use ("COUs") which forbid claims under California

11  law and require legal disputes to be brought in King County, Washington.

12  Amazon has not established the threshold issue of contract formation. To show a valid

13  internet contract was formed, a website owner must provide "conspicuous notice of the existence"

14  of the contract terms and the website user must "unambiguously manifest his assent" to those terms.

15  When the terms of an agreement are referenced by hyperlink, "[s]imply underscoring words or

16  phrases . . . will often be insufficient to alert a reasonably prudent user that a clickable link exists."

17  *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) (citing *Sellers v.*

18  *JustAnswer LLC*, 73 Cal. App. 5th 444, 481 (2021).[1] "[T]he onus [is] on website owners to put

19  users on notice of the terms to which they wish to bind consumers." *Nguyen v. Barnes & Noble*

20  *Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014).

21  Amazon relies on discreet hyperlinks that purportedly direct website users to its COUs. The

22  COUs consist of nearly ten single-spaced pages, over twenty separate sections, and approximately

23  ten embedded hyperlinks. Amazon argues Heinz and all other website users assent to the terms of

24  its COUs when they create an account, sign in, or place an order with Amazon. However, as shown

25  below, the hyperlinks are lost on the page because they are not underlined, bolded, or capitalized,

---

[1] Citations and internal quoted brackets, quotations, and ellipses are omitted throughout, and emphasis is original unless otherwise noted.

1    and the cluttered webpages contain between six to twenty-one different hyperlinks. Amazon's

2    webpages wholly fail to meet the standards for contract formation.

3         The forum-selection clause is also unenforceable. First, the forum-selection and choice-of-

4    law clauses must be considered together. Where, as here, these clauses substantially diminish the

5    rights of Californians, they are unenforceable. Together the clauses waive Heinz's unwaivable right

6    to a jury trial under California precedent. The clauses also waive Heinz's fundamental rights under

7    CIPA. The waiver of these fundamental California rights justifies denial of transfer.

8         Lastly, Amazon alternatively argues the Court should dismiss this action. Amazon could

9    have easily provided a simple warning that the conversations are being recorded at the outset of the

10   conversation, but, instead, argues the conversations were not confidential so it is allowed to record

11   them. In doing so, Amazon fails to acknowledge a conversation is confidential where a party to that

12   conversation has an objectively reasonable expectation that the conversation is not being recorded.

13   *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002).

14        California consumers are accustomed to being informed at the outset of a telephone
          call whenever a business entity intends to record the call...in the absence of such an
15        advisement, a California consumer reasonably would anticipate that such a telephone
          call is not being recorded, particularly in view of the strong privacy interest most
16        persons have with regard to the personal financial information frequently disclosed in
          such calls.
17

18   *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 118 fn. 10 (2006). Heinz asserts these same

19   expectations of privacy hold true for California consumers with respect to online chat

20   conversations, which are equivalent to telephone conversations with customer service agents, as

21   they relate to the same topics and content.

22        Amazon also claims its vague and hidden "Privacy Notice" informs consumers that it

23   records the chat conversations. The notice does not say that, is not conspicuously disclosed, and

24   does not comply with CIPA. To put a consumer on "adequate notice" that a conversation is being

25   recorded, binding law holds there must be an "explicit advisement" at the "outset" of the

26   conversation. *Kight v. Cashcall*, 200 Cal. App. 4th 1377, 1399 (2011). The hidden notice does not

27   do this. Accordingly, Amazon's request to transfer and motion to dismiss should be denied.

28

## II.      STATEMENT OF FACTS

### A.  Heinz's Claims

In July 2022 through September 2022, Heinz, using his cellular phone, visited Amazon's website and had conversations with Amazon via the chat feature on its website. ECF No. 21 ("FAC") at ¶ 10. The conversations were confidential in nature. *Id.*, ¶¶ 15, 20. At no time during these conversations did Amazon disclose to Heinz that it was recording the conversations. Amazon, however, did in fact record its conversations with Heinz. *Id.*, ¶ 11.

As one of the largest data aggregators in the world, it is Amazon's practice to record all communications that occur on its website and use the recorded conversations for financial gain. *Id.*, ¶¶ 12, 20. Published research has found that data miners like Amazon secretly use recorded chat conversation for data mining, marketing, and advertising purposes. *Id.*, ¶¶ 18-19. "This rise of business messaging is set to produce a treasure trove of conversational data – chat history and context – that business can begin to use and gain a more complete and personal view of their customers. ***It's the juiciest of low-hanging fruit.***" *Id.*, ¶ 19 (emphasis added).

The recorded conversations were confidential because at no point did Heinz have a reasonable expectation that any of the conversations with Amazon were being recorded because at no time did Amazon inform Heinz it was recording the conversations. *Id.*, ¶ 21; *see also id.*, ¶¶ 13-16. Unlike several other prominent websites, there was no pre-conversation notice that the conversations were being recorded. *Id.*, ¶¶ 22-26. Such warnings are ubiquitous today. *Id.*, ¶ 30. Thus, Heinz brings claims for violation of section 632 of CIPA, and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), on behalf of a California class.

### B.  Amazon's Alleged Venue Selection Agreement

Amazon claims this Court is not the proper venue for Heinz's claims, despite removing this action to this Court from the California Superior Court. Amazon claims Heinz agreed to venue selection and choice-of-law provisions (as well as a jury trial waiver) buried in its "Conditions of Use": "Washington law governs 'any dispute or claim relating in any way to your use of any Amazon Service will be adjudicated in the state or Federal courts in King County, Washington, and

1  you consent to exclusive jurisdiction and venue in these courts." Mtn. at 4. Amazon seeks to insulate

2  itself by transferring this matter to Washington, and then applying Washington law, based on a

3  forum selection clause which was never read or seen, and which is buried at the end of the COUs.

## III. THE MOTION TO TRANSFER SHOULD BE DENIED

### A. Heinz Did Not Agree to Amazon's "Conditions of Use" or Privacy Notice

#### 1. Amazon's Website Display Screens at Issue

6   Amazon shows cropped and altered outlined images of the "Sign in" and "Create account"

7  pages and buries the "Place you order" at end of the declaration of Matondo (ECF No. 24-1 at Ex.

8  F). *See* Mtn. 3-5. The "Create account" and "Sign in" pages are depicted in full without the added

9  outlines or cropping in the Straub Decl. at ¶ 3. The "Place your order" webpage contains much

10  more information than Amazon represents in its Motion:



*Id.*, ¶ 4. As shown above, the webpage is littered with different font sizes, colors (e.g., orange, yellow, green, bolded black, light black, red, turquoise, and blue), bolding, and contains numerous images, buttons, and extraneous information such as customers' personal address, credit card information, shipping options, and purchase summary. The page contains 21 different hyperlinks. *Id.*, ¶ 5. None of the hyperlinks are underlined, in all caps, or are bolded or in larger font.

Like other consumers, when signing up for Amazon's service and at all other times, Heinz never saw the hyperlinks to Amazon's COUs or Privacy Notice. Heinz Decl., ¶ 5. Thus, he never clicked on the hyperlinks and never read or saw them. *Id.*, ¶¶ 5, 10. Heinz never signed a contract with Amazon and was never provided a copy of the contracts. *Id.*, ¶¶ 10-11. Looking at Amazon's alleged disclosure now, Heinz can "barely make out the small print with a hyperlink to the conditions of use." *Id.*, ¶ 7. Instead, like other consumers, his "attention is drawn to the large yellow button which states 'Continue' and fills up the majority of the page. The print under the continue button is much smaller than the other words on the page and is in grey font which makes it difficult to read." *Id.* The light blue hyperlink to the COUs in no way stands out from the other light blue fonts on the screen. *Id.* The alleged contract is also called "'conditions of use' which is confusing." *Id.*, ¶ 9. Consumers expect that a contract would use statements like "terms of the agreement" or "terms of the contract" and not "conditions of use." *Id.*

Heinz brought this action in the County of Yolo where he resides. *Id.*, ¶ 11. It would be highly inconvenient and costly for him to travel to the state of Washington for trial or any other purpose relating to this lawsuit which is why he chose to file the lawsuit where he resides. *Id.* Heinz never agreed that all lawsuits related to Amazon must be filed in Washington. *Id.*

### 2. Amazon Fails to Establish the Threshold Issue of Contract Formation

According to Amazon, its users "affirmatively agree" to lengthy and convoluted COUs and a Privacy Notice when they create an account, sign-in, or place an order with Amazon. Mtn. at 3. This is not true. "Reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility." *Specht v. Netscape Communs. Corp.*, 306 F.3d 17,

1   35 (2d Cir. 2002) (California law). Website users must "unambiguously manifest their assent to the

2   terms and conditions to create a binding contract." *Berman*, 30 F.4th at 853.

3          It is binding law in California and the Ninth Circuit that a browse-wrap agreement is neither

4   conspicuous notice nor an enforceable agreement and does not include a manifestation of assent to

5   its terms. *See Nguyen*, 763 F.3d at 1176-77 ("[A] browse wrap agreement does not require the user

6   to manifest assent to the terms and conditions expressly"). "[M]erely clicking on a button on a

7   webpage . . . does not signify a user's agreement to anything." *Berman*, 30 F.4th at 858. Similarly,

8   sign-in wrap agreements are subject to binding precedent holding an inconspicuous hyperlink in

9   small point font does not suffice as a manifestation of consumer assent. *Id.*; *Sellers*, 73 Cal. App.

10  5th at 466. Absent evidence that a consumer had actual knowledge of the agreement, online

11  contracts are only enforceable if: "(1) the website provides reasonably conspicuous notice of the

12  terms to which the consumer will be bound; and (2) the consumer takes some action, such as

13  clicking a button or checking a box, that unambiguously manifests his or her assent to those terms."

14  *Berman*, 30 F.4th at 856. Amazon's webpages do not satisfy these requirements.

15         To show a valid internet contract was formed, "a provider must first establish the contractual

16  terms were presented to the consumer in a manner that made it apparent the consumer was assenting

17  to those very terms when checking a box or clicking on a button." *Sellers*, 73 Cal. App. 5th at 461.

18  When the terms of an agreement are hidden in a hyperlink, "***Simply underscoring words or phrases***

19  *. . . **will often be insufficient*** to alert a reasonably prudent user that a clickable link exists." *Berman*,

20  30 F.4th at 857 (citing *Sellers*, 73 Cal. App. 5th at 481) (emphasis added). "[T]he onus [is] on

21  website owners to put users on notice of the terms to which they wish to bind consumers." *Nguyen*,

22  763 F.3d at 1179; *see also Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 867 (2016)

23  ("Online retailers would be well-advised to include a conspicuous textual notice with their terms of

24  use hyperlinks going forward."). Courts must also consider "the design and content of the website

25  and the agreement's webpage." *Nguyen*, 763 F.3d at 1177.

26         Amazon claims placing hyperlinks to the COUs and Privacy Notice below the large and

27  colorful "Place your order," "Sign In," or "Continue" buttons is conspicuous notice and clicking on

28

those buttons constitutes an unambiguous manifestation of assent of the terms within the hyperlinks. Amazon fails to recognize "the proximity or conspicuousness of the hyperlink alone is not enough to give rise to constructive notice." *Id.* at 1178. Amazon also fails to accept that "the text of the button itself [merely displaying "Continue" or "Place your order"] gave no indication that it would bind plaintiff[] to a set of terms and conditions." *Berman*, 30 F.4th at 858.

Unlike most websites, Amazon users are "not required to click the hyperlink or otherwise read the terms to proceed[.]" *Sellers*, 73 Cal. App. 5th at 466. Amazon purposefully made the hyperlinks in the smallest font on the screens. The giant yellow buttons and text are intentionally designed to take the attention of the user away from the hyperlinks which are "dwarfed by the large and colorful" buttons. *Shultz v. TTAC Publ'g, LLC*, 2020 U.S. Dist. LEXIS 198834, at *10-11 (N.D. Cal. Oct. 26, 2020); *see also Meyers v. Alphabet, Inc.*, 2022 U.S. Dist. LEXIS 98298, at *12 (C.D. Cal. Feb. 14, 2022) ("consumer did not need to click a box indicating assent to any terms").

The hyperlinks are not underlined, in all caps, or bolded or in larger font, which is standard practice. *Berman*, 30 F.4th at 857 ("Customary design elements denoting the existence of a hyperlink include . . . use of all capital letters . . ."); *Williams v. DDR Media, LLC*, 2023 U.S. Dist. LEXIS 33319, at *14 (N.D. Cal. Feb. 28, 2023) ("Terms of Use hyperlink is not 'readily apparent' because it is not "all capitalized"); *Shultz*, 2020 U.S. Dist. LEXIS 198834, at *11 (Plaintiff is "not bound by the Terms and conditions" although the "hyperlink to the Terms and Conditions is in light blue, it is not underlined, highlighted, in all caps, or otherwise set off from the page").

Amazon argues the light blue color of the hyperlinks is enough. Mtn. at 3. First, distracting the consumer from the COUs, the "create account" screen has seven different hyperlinks and the "Sign in" screen has six hyperlinks. Straub Decl., ¶ 5. The "Place your order" page is littered with text in different fonts, sizes, and colors (e.g., orange, yellow, green, bolded black, light black, red, turquoise, and blue) and contains 21 different hyperlinks. *Id*. If a website user actually clicks on the hyperlink to the COUs, the user is confronted with nearly ten single-spaced pages containing thousands of words, over twenty separate sections, and approximately ten more embedded hyperlinks. *See e.g.*, ECF No. 24-1 at Ex. A. ***In sum, these pages contain 44 different hyperlinks.***

1    Second, merely changing the hyperlinks to a light blue color is not adequately conspicuous:

2    "Although the hyperlink to the Terms and Conditions is in light blue, it is not underlined,

3    highlighted, in all caps, or otherwise set off from the page." *Shultz*, 2020 U.S. Dist. LEXIS 198834,

4    at *11, 12 (finding plaintiff is "not bound by the Terms and Conditions"). A "mere change in color

5    of the hyperlinks" is not sufficient. *Colgate v. Juul Labs, Inc.*, 402 F. Supp. 3d 728, 765-66 (N.D.

6    Cal. 2019) ("I am not convinced that the mere change in color of the hyperlinks, without more, is

7    enough."). "Using a different color for the hyperlink from the surrounding text, by itself, is not

8    sufficient to render the hyperlink reasonably conspicuous." *Wilson v. Redbox Automated Retail,*

9    *LLC*, 448 F. Supp. 3d 873, 885 (N.D. Ill. 2020). "Courts have required more than mere coloring to

10   indicate the existence of a hyperlink to a contract." *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454,

11   467 (S.D.N.Y. 2017). In *Colgate*, the hyperlinks were in blue, and the screen was much less

12   cluttered than Amazon's:

13
14
15
16

17
18
19
20
21
22

23   *See Colgate*, 402 F. Supp. 3d at 765. The court held that the blue color "highlights, without more,"

24   was insufficient to create a "manifestation of assent to" the "Terms and Conditions." *Id.* 765-66.

25      Due to Amazon's distracting webpage design, the Second Circuit held Amazon's webpage

26   fails to provide consumers with adequate notice of its COUs. In holding that Amazon "failed to

27   show" its COUs place a consumer on reasonable notice of the terms in the COUs, the Second Circuit

28   stated, "the presence of customers' personal address, credit card information, shipping options, and

1   purchase summary are sufficiently distracting so as to temper whatever effect the notification has."

2   *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 237-38 (2d Cir. 2016). The Second Circuit emphasized

3   (1) a user "is not specifically asked whether she agrees or to say 'I agree'"; (2) "Amazon chose not

4   to employ a clickwrap mechanism" which displays the terms of the agreement; and (3) "[t]he

5   message itself—'By placing your order, you agree to Amazon.com's conditions of use'—is not

6   bold, capitalized, or conspicuous in light of the whole webpage." *Id.* at 236-38.

7          Despite the Second Circuit's holding, Amazon again argues that its statements in light grey

8   font "you agree to Amazon's privacy notice and conditions of use" creates unambiguous

9   manifestation of the users assent to the one-sided venue and choice-of law clauses contained in the

10   COUs. *See* Mtn. at 3. The Ninth Circuit held the more direct statement, "'I understand and agree to

11   the <u>Terms & Conditions</u>' did not create an unambiguous manifestation of assent." *Berman*, 30 F.4th

12   at 854. Moreover, "the phrase **'terms of use' may have no meaning or a different meaning to a**

13   **large segment of the Internet-using public**. In other words, a conspicuous 'terms of use' hyperlink

14   may not be enough to alert a reasonably prudent Internet consumer to click the hyperlink." *Long*,

15   245 Cal. App. 4th at 867 (emphasis added). Here, Amazon calls its agreement "Conditions of Use"

16   which is more ambiguous than "Terms of Use" as "Terms" often refer to the terms in a contract.

17          Lastly, despite submitting over 120 pages, Amazon provides no evidence Heinz ever clicked

18   on the hyperlinks or viewed its COUs or Privacy Notice. This is important because "the key issue

19   is whether data regarding how many users actually click on the hyperlink to [] is relevant to

20   determine whether the terms are reasonably conspicuous." *See Regan v. Pinger, Inc.*, 2020 U.S.

21   Dist. LEXIS 250986, at *4 (N.D. Cal. July 21, 2020). Heinz never saw the COUs or Privacy Notice,

22   did not sign or agree to bring any action in Washington, and was not provided with the alleged

23   agreements. Heinz Decl., ¶¶ 5, 10-11.

24          Amazon relies on unpublished cases which predate or are at odds with the Second Circuit's

25   decision in *Nicosia v. Amazon.com, Inc.* and the controlling authority cited above. *See* Mtn. at 8-9.

26   *Rosskamm* involved *pro se* plaintiffs and did not address the controlling authority cited above such

27   as *Berman, Long,* and *Sellers. Rosskamm v. Amazon.com, Inc.*, 2022 U.S. Dist. LEXIS 197046

28

1    (N.D. Ohio Oct. 27, 2022). *Schumacher v. Amazon.com LLC*, 2012 WL 13036856 (C.D. May 29,

2    2012) is devoid of any analysis as the court assumed the plaintiff "affirm[ed] that he read the

3    applicable terms." There is no discussion of the required conspicuous notice and unambiguous

4    assent because it predates *Berman, Long,* and *Sellers*. *Segal* also predates this authority and stated

5    the "clickwrap agreement" was enforceable but relies on cases where the user was required to click

6    an "I agree" button which does not exist here. *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367,

7    1369 (S.D. Fla. 2011) (citing *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630 (4th Cir.

8    2009) (plaintiffs clicked "I Agree" to a clickwrap agreement on one occasion); *Koresko v.

9    RealNetworks, Inc.*, 291 F. Supp. 2d 1157, 1162-63 (E.D. Cal. 2003) (plaintiff clicked once on a

10   button marked "I agree.")). Here, Amazon intentionally does *not* include an "I agree" button.[2]

11       Amazon's motion should be denied as Heinz was not provided conspicuous notice and never

12   manifested his assent to the COUs which is required by California and the Ninth Circuit law.

13   **B.  The Forum-Selection Clause Waives Heinz's Fundamental Rights and is Invalid**

14          **1.  The Standards for Enforcing a Forum Selection Clause**

15       Ordinarily, a district court considering a § 1404(a) motion has broad discretion to either

16   retain or transfer an action based on the "convenience of the parties and various public-interest

17   considerations." *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 62 (2013) ("*Atl.

18   Marine*"). When a party requests transfer based on a forum selection clause, the Court must first

19   establish that the clause is valid. *See id.* at 62 n. 5 ("Our analysis presupposes a contractually valid

20   forum-selection clause"). While forum selection clauses are typically presumed valid, "both the

21   Supreme Court and the Ninth Circuit have recognized an exception to that general rule when the

22   contractual choice-of-forum law would contravene a strong public policy of the forum in which suit

23   is brought, whether declared by statute or by judicial decision." *Nutracea v. Langley Park Invs.

24   PLC*, 2007 WL 135699, at *2 (E.D. Cal. Jan. 16, 2007) (citing *M/S Bremen v. Zapata Off-Shore*

---

[2] *Simonoff v. Expedia, Inc.*, 643 F.3d 1202 (9th Cir. 2011) is not applicable. It does not involve conspicuous notice because the plaintiff "voluntarily dismissed the action and re-filed his suit in" the state referenced in the forum selection clause. *Id.* at 1205.

1  *Co.*, 407 U.S. 1, 15 (1972) and *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000)).

2  "[T]he party seeking to enforce the forum selection clause bears the burden to show

3  litigating the claims in the contractually designated forum 'will not diminish in any way the

4  substantive rights afforded under California law.'" *Verdugo v. Alliantgroup, L.P.*, 237 Cal. App.

5  4th 141, 147 (2015) (quoting *Wimsatt v. Beverly Hills Weight etc. Internat., Inc.*, 32 Cal. App. 4th

6  1511, 1522 (1995)).

7      **2.  The Forum Selection and Choice-of-Law Clauses Must be Considered Together**

8        When choice-of-law and forum selection clauses are "'inextricably bound up' in one

9  another[,]" they must be considered together by the court. *Am. Online, Inc.*, 90 Cal. App. 4th at 13

10  (quoting *Hall v. Superior Court*, 150 Cal. App. 3d 411, 416 (1983)). "[A] determination as to the

11  validity of the choice of law provision is prerequisite to a determination of whether the forum

12  selection clause should be enforced." *Hall*, 150 150 Cal. App. 3d at 416.

13        It is inappropriate to punt this action, consisting entirely of California consumers asserting

14  California causes of action, to Washington with no regard for what happens to the claims once they

15  arrive. *Atl. Marine* established that a § 1404(a) venue transfer "will not carry with it the original

16  venue's choice-of-law rules." 571 U.S. at 64. Thus, if this case were transferred, Washington choice

17  of law rules would apply. *Id*. The massive risk that the Washington court would enforce the choice

18  of law provision here is unacceptable, because Heinz and the proposed class would lose substantive

19  California rights which cannot be waived. *See e.g.*, *Lang*, 347 F. Supp. 3d at 429-30 (holding clauses

20  "were unenforceable as they "required Plaintiff to relinquish unwaivable rights under California

21  law"). This is a clear case where the two clauses work in tandem to violate California public policy

22  and must be considered together because they are "intertwined."

23      **3.  Amazon Has Failed to Meet its Burden Showing the Forum Selection and Choice-of-Law Clauses Do Not Diminish Heinz's Substantive Rights**

24

25        Amazon's forum selection clause is unenforceable because it diminishes Heinz's

26  substantive rights by contravening two strong public policies of California. *See Bremen*, 407 U.S.

27  at 12-13; *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004); *Doe 1 v. AOL LLC*,

28

552 F.3d 1077, 1085 (9th Cir. 2009) ("California public policy is violated by forcing such plaintiffs to waive their rights to a class action and remedies under California consumer law."); *Brack v. Omni Loan Co., Ltd.*, 164 Cal. App. 4th 1312, 1328 (2008) (holding clause unenforceable when "it is clear it represents a fundamental policy of this state"). "California courts will refuse to defer to the selected forum if to do so would substantially diminish the rights of California residents in a way that violates our state's public policy." *Am. Online, Inc.*, 90 Cal. App. 4th at 12.

First, the COUs waive Heinz's right to a jury trial. ECF No. 24-1 at 12.[3] This alone invalidates the forum selection clause. Following *Grafton Partners v. Superior Court*, 36 Cal. 4th 944 (Cal. 2005), the Court of Appeals held it was error to enforce a forum selection clause "where the clause includes a predispute jury trial waiver[.]" *Handoush v. Lease Fin. Grp., LLC*, 41 Cal. App. 5th 729, 741 (2019). The same result applies here.[4]

Second, California's Constitution and California judicial decisions have declared a strong and fundamental public policy of protecting Californian's right to privacy. California Civil Code § 3513 provides that "a law established for a public reason cannot be contravened by a private agreement." The California Supreme Court has definitively linked the constitutionally protected right to privacy within the purpose, intent and specific protections of CIPA, including specifically, Penal Code § 632. "(Cal. Const., art. I, § 1was enacted in part specifically to protect California from overly intrusive business practices that were seen to pose a significant and increasing threat to personal privacy." FAC, ¶ 44 (quoting *Kearney*, 39 Cal. 4th at 125). Thus, California has a strong and continuing public interest in the full and vigorous enforcement of CIPA including judicial

---

[3] References to page numbers in the declaration of Matondo (ECF No. 24-1) are to the ECF page numbers printed at the top right side of the pages.

[4] Although Amazon has wholly failed to meet its burden, it appears that predispute jury trial waivers are permissible under Washington law. *See Adler v. Fred Lind Manor*, 153 Wn. 2d 331, 360 (Wash. 2004). Thus, Amazon's forum selection clause is not enforceable. *See Handoush*, 41 Cal. App. 5th at 739 ("Here, enforcing the forum selection clause in favor of New York will put the issue of enforceability of the jury trial waiver contained in the same agreement before a New York court. Because New York permits predispute jury trial waivers, and California law does not, enforcing the forum selection clause has the potential to operate as a waiver of a right the Legislature and our high court have declared unwaivable.").

decisions requiring clear warnings that conversations are being recorded "at the outset of the conversation" where a party to that conversation has an objectively reasonable expectation the conversation is not being recorded. *Kearney*, 39 Cal. 4th at 118. The wholesale waiver of CIPA via Amazon's choice-of-law provision violates this strong public policy.

Invasion of privacy claims "should be governed by and decided under the wiretapping laws of the state in which the class member resides." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 605 (N.D. Cal. 2015). "[W]hen faced with two recording laws, a court applies the law of the state where the aggrieved party whose privacy rights were invaded was located when recorded, not the law of the state where the recording party was located." *Erceg v. LendingClub Corp.*, 475 F. Supp. 3d 1071, 1078 (N.D. Cal. 2020). Thus, Heinz and the California class will effectively be denied their day in court if the choice-of-law provision is enforced. It is unclear whether claims under the Washington Privacy Act ("WPA") are even enforceable by a private plaintiff as part of a class action. Importantly, CIPA does not require a showing of actual damages. "It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." Cal Penal Code § 637.2(c). Unlike CIPA, the WPA mandates injury to the plaintiff's business, person, or reputation. Wash. Rev. Code § 9.73.060.

Amazon cites three inapposite cases for the proposition that there is not a "conflict on the relevant issues here." Mtn. at 9-10 n.4. In *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051 (S.D. Cal. 2015), the plaintiffs argued Amazon's arbitration agreement was illusory or unconscionable. *Id.* at 1059. The plaintiffs did not argue a difference between California and Washington law. *Id.* at 1062 ("Plaintiffs suggest, without arguing directly, that applying Washington law would undermine California's fundamental policy against unconscionable consumer contracts."). The court held both Washington and California law prohibit unconscionable consumer contracts, so there was no conflict. *Id.* at 1063-64. The case does not address CIPA or privacy laws and is not applicable here. In *Brinkley v. Monterey Fin. Servs., LLC*, 2019 WL 4295327, (S.D. Cal. May 6, 2019), the court did not discuss the differences in laws detailed above such as the WPA's injury and actual damages requirements. In *Garner v. Amazon.Com, Inc.*, 603

F. Supp. 3d 985, 994 (W.D. Wash. 2022), the plaintiffs conceded that Washington law "likely" applied, did not argue that choice-of law provision contravened California public policy, and, instead, claimed that discovery was needed to resolve the dispute. *Id.* at 994.

The forum selection clause is invalid because its enforcement would contravene fundamental California public policies, namely the constitutional right to a jury trial and right to privacy.

### 4. The Wholesale Waiver of CIPA and Right to A Jury Trial Constitute an Extraordinary Circumstance Justifying the Denial of Transfer

Were this Court to find that the forum selection clause is valid, *Atl. Marine* dictates that it considers public interest factors that cut against transfer in this case. 571 U.S. at 64. Public interest factors include (1) the local interest in the lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum. *Lueck v. Sundstrand*, 236 F.3d 1137, 1147 (9th Cir. 2001) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 259-61(1981)).

In considering the first factor, courts look exclusively to the local forum's interest in the litigation. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1182 (9th Cir. 2006) ("with this factor, we ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest"); *see also Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 771 (9th Cir.1991) (finding that California has an interest in having its citizens compensated for torts committed against them).

California clearly has a significant interest in this case. The California Constitution provides that "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const. art. I, § 1.

> In 1967, the California Legislature enacted a broad, protective invasion-of-privacy statute in response to what it viewed as a serious and increasing threat to the confidentiality of private communications resulting from then recent advances in science and technology that had led to the development of new devices and techniques for eavesdropping upon and recording such private communications.

*Kearney*, 39 Cal. 4th at 115. California has "a strong and continuing interest in the full and vigorous application of" CIPA. *Id.* at 125. CIPA was specifically enacted to "protect the right of privacy of the people" of California. Cal. Penal Code § 630. Further, Amazon "purposefully interjected" itself into this forum by recording the conversations of Californians without consent. *See Ekland Mktg. Co. of Cal., Inc. v. Lopez*, 2006 U.S. Dist. LEXIS 71169, at *18-19 (E.D. Cal. Sep. 29, 2006). Thus, California has a specifically strong fundamental interest in this action warranting denial of Amazon's request to transfer.

For similar reasons, this Court is also more familiar with CIPA. *See id.* The other factors are not at issue. The burden on local courts and juries is a non-factor. The congestion of the court is slightly in favor of this Court. *Compare Key Constr., Inc. v. W. Sur. Co.*, 2023 U.S. Dist. LEXIS 30475, at *19 n.2 (D. Kan. Feb. 23, 2023) (median time from filing to trial 35.3 months and 418 cases per judge in W.D. Wash.) *with Green Aire for Air Conditioning W.L.L. v. Salem*, 2020 U.S. Dist. LEXIS 147136, at *18-19 (E.D. Cal. Aug. 14, 2020) ("Eastern District of California took a median time of 32.2 months from filing to trial"). Due to modern technology and the ease with which electronically stored documents and paper documents may be sent from one state to another, much, if not all of the evidence that Amazon expects that it will have to produce can easily be sent to the Eastern District of California, and at minimal cost. *See e.g. DIRECTV, Inc. v. EQ Stuff, Inc.*, 207 F. Supp. 2d 1077, 1083 (C.D. Cal. 2002) (documentary evidence can be "easily transported to California"). Thus, public interest factors dictate the denial of Amazon's request.

### C.  Amazon's COUs Contain Several Unconscionable Clauses

If a website user actually clicks on the hyperlink to the COUs, the user is confronted with nearly ten single-spaced pages containing thousands of words, over twenty separate sections, and approximately ten more embedded hyperlinks.[5] *See e.g.*, ECF No. 24-1 at Ex. A. Several of these hyperlinks do not even function. Straub Decl., ¶ 6. Amazon's purported COUs contain forced jurisdictional, venue, and choice-of law clauses which are buried toward the end of the documents.

[5] Described below in Section IV.A.1, The Privacy Notice contains a staggering 74 embedded hyperlinks. Straub Decl., ¶ 6.

1   ECF No. 24-1 at 12. The COUs disclaim all and any available warranties. *Id.* at 11-12. The COUs

2   further waive consumers' rights to seek "direct, indirect, incidental, punitive, and consequential

3   damages." *Id.* As noted above, the COUs "waive any right to a jury trial." *Id*. at 12.

4         Such one-sided agreements are particularly oppressive when they involve large companies

5   billing customers: "The odds were far more likely that the customers would have claims in addition

6   to just getting their money back than the business would have claims in addition to just getting

7   paid." *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1408 (2003). The Ninth Circuit and California

8   Supreme Court have made clear that such agreements are unconscionable without at least "some

9   reasonable justification for such one-sidedness based on 'business realities.'" *Armendariz v. Found.*

10  *Health Psychare Servs., Inc.*, 24 Cal. 4th 83, 117 (2000); *see also Pokorny v. Quixtar, Inc.*, 601

11  F.3d 987, 1000-01 (9th Cir. 2010) (affirming determination an agreement was substantively

12  unconscionable, "[p]articularly in situations like this one, where no special circumstance

13  necessitates a non-mutual provision").

14        Under these circumstances, courts refuse to sever the unlawful provisions or re-write the

15  agreement and instead find the entire agreement unenforceable. *See Armendariz*, 24 Cal. 4th at 124

16  ("the trial court did not abuse its discretion" in refusing to sever the unlawful provisions); *Ajamian*

17  *v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 803 (2012) (same).

18  **IV.     AMAZON'S MOTION TO DISMISS SHOULD BE DENIED**

19           **A.  Heinz's CIPA Claims Should be Upheld**

20        Amazon's Motion cites to some of the correct legal standards governing California Penal

21  Code § 632, but fundamentally misapplies those standards, resulting in an erroneous conclusion.

22  The sole legal question in this Motion is—will the California Supreme Court, as it did with customer

23  service telephone calls, hold that consumers have a reasonable expectation of privacy that their

24  customer service chat discussions with a company are not being recorded, where the company has

25  not advised them that the chats are being recorded?  If the answer is "yes" which Heinz believes it

26  will be, then his claims should be upheld in full. With chat features and AI being used at an

27  alarmingly increased rate, in lieu of traditional telephonic communications of the same nature,

28

1   safeguarding consumer privacy in this minimally burdensome respect out of the gate is not only

2   prudent but necessary to avoid a snowball effect.

3       As discussed above, Heinz alleges he engaged in customer service chats with Amazon

4   through its chat feature on its website. The feature could have[6] but did not disclose the

5   communications would be recorded. Heinz's reasonable belief was he would not be recorded, and

6   the sole purpose of the conversations was to assist with Heinz's immediate customer service

7   interaction, much like a phone call where a customer asks questions with a customer service agent.

8       **1. Amazon's Vague Privacy Notice is Not Conspicuous, and Does Not Comply
           with CIPA**

9   *First*, as noted in Section III.A above, it is binding law in California and the Ninth Circuit

10  that a browse-wrap agreement is neither conspicuous notice nor an enforceable agreement to its

11  contents and does not include a manifestation of assent to its terms. *See Nguyen*, 763 F.3d at 1176-

12  77 ("Unlike a clickwrap agreement, a browse wrap agreement does not require the user to manifest

13  assent to the terms and conditions expressly"). "[M]erely clicking on a button on a webpage . . .

14  does not signify a user's agreement to anything." *Berman*, 30 F.4th at 858. Similarly, sign-in wrap

15  agreements are subject to binding precedent holding an inconspicuous hyperlink in small point font

16  does not suffice as a manifestation of consumer assent to its terms. *Id.*; *Sellers*, 73 Cal. App. 5th at

17  466. For similar reasons as argued above regarding conspicuous notice, Heinz cannot be bound by

18  the Privacy Notice as a basis for his "consenting" to have his chat transcripts recorded. *See supra*,

19  § III.A.2.

20      *Second*, if a user was to click on the hidden Privacy Notice hyperlink when they sign in,

21  create an account, or make a purchase, he would be confronted with 9 pages of single-space text

22  which contains 3,479 words, 161 paragraphs, and 393 lines. Straub Decl., ¶ 6. The Privacy Notice

23  contains a overwhelming 74 embedded hyperlinks. *Id.* Several of these hyperlinks do not even

24

25  ───────────────
    [6] Amazon programmed and designed its website on which the chat bots engage in these discussions
26  with consumers. All it would need to do is add a conspicuous disclaimer, which is industry standard
    anyways, telling people that the chat is being recorded. *See* FAC at ¶¶ 22-26. This could be done
27  as easily as a one button click that takes one second to initiate, just like the recording feature present
    when using Zoom.
28

function. *Id.* For example, hyperlinks in the sentences that state "Click here to see examples of what we collect" and "What Personal Information About Customers Does Amazon Collect?" do not work. *Id.* The Privacy Notice does not state that it records the chats which occur on its website. A search for "recordings" in the Privacy Notices submitted by Amazon results in sentences which are unrelated to the chats: "voice recordings when you speak to Alexa." *Id*. Further, under the sentence "Examples of the information we collect and analyze," Amazon fails to reference anything related to "conversations" or the chat feature and instead vaguely states it generally collects information given to Amazon. *See e.g.*, ECF No. 24-1 at 27-28.

*Third*, even if the Court disagrees with the conspicuousness issue as it pertains to contract formation, this still fails the actual test for consent under California law interpreting CIPA. The California Supreme Court has held that an appropriate warning the call is being recorded, must be given "at the outset of the conversation" and CIPA prohibits the recording of any conversation "without first informing all parties to the conversation that the conversation is being recorded." *Kearney*, 39 Cal.4th at 118.[7] "California must be viewed as having a strong and continuing interest in the full and vigorous application of [CIPA] prohibiting the recording of telephone conversations without the knowledge or consent of all parties to the conversation." *Id*. at 125. Citing to *Kearney*, the Court of Appeal observed:

> But the high court rejected the Court of Appeal's suggestion that under California law there was no need for an **explicit advisement** regarding the secret recording because 'clients or customers of financial brokers ... "know or have reason to know" that their telephone calls with the brokers are being recorded.'

*Kight v. Cashcall*, 200 Cal. App. 4th 1377, 1399 (2011) (emphasis added) (citing *Kearney*). Thus, to put a consumer on "adequate notice" that the call is being monitored or recorded, binding law holds there must be an "explicit advisement."  Consent under CIPA to record a communication can only be obtained through a conspicuous recording advisory made at the outset of a communication. Recording a protected communication without the consent of any party has been held to be "an

---

[7] *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1661-1662 (1993) (the Privacy Act is violated at the moment the party begins making a secret recording, and "[n]o subsequent action or inaction is of consequence to this conclusion.").

---

1   affront to human dignity." *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1660-61 (1993).

2       Amazon may wish that its browse-wrap privacy notice on its website is a conspicuous

3   disclosure, but it simply is not. It does not come close to the standards required under California

4   law, which is troubling because Amazon employs thousands of software engineers and hundreds of

5   lawyers, and is one of the largest data aggregation companies in the world. It could easily place a

6   disclosure in bold letters at the top of the chat screens, or add a simple clickwrap "I agree this chat

7   may be recorded" at the beginning of each chat. This would have taken very little effort.

8       Amazon's position is that Heinz knew his communications were being recorded. This is not

9   accurate, as he had pled the exact opposite, and as Amazon has provided no evidence Heinz was

10   provided an explicit advisory at the outset of the communication that his protected communication

11   was being recorded. Accordingly, there was no sufficient notice, and there was no consent.

### 2. A Customer Service Chat on a Cellular Telephone Carries the Same Expectation of Privacy as a Customer Service Telephone Call

13       "California clearly has an interest in protecting the privacy of telephone conversation of

14   California residents while they are in California." *Kearney*, 39 Cal. 4th at 104. A conversation is

15   confidential where a party to that conversation has an objectively reasonable expectation that the

16   conversation is not being overheard or recorded. *Flanagan v. Flanagan*, 27 Cal. 4th at 775. As the

17   California Supreme Court observed:

> California consumers are accustomed to being informed at the outset of a telephone call whenever a business entity intends to record the call, it appears equally plausible that, in the absence of such an advisement, a California consumer reasonably would anticipate that such a telephone call is not being recorded, particularly in view of the strong privacy interest most persons have with regard to the personal financial information frequently disclosed in such calls.

*Kearney*, 39 Cal. 4th at 118 fn. 10. Heinz asserts that these same expectations of privacy hold true

for California consumers with respect to chat transcripts, which are a modern equivalent to

telephone conversations with customer service agents, as they relate to the same topics and content.

The Ninth Circuit agrees that such communications fall within the gambit of CIPA protection.

*Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022); *In re Facebook Inc.*

*Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) (holding "Plaintiffs have sufficiently

alleged a clear invasion of the historically recognized right to privacy" based on Facebook's website recording practices).

Seventeen years have passed since the California Supreme Court unanimously held that consumers expect to be told at the outset of a conversation if their customer service telephone communications with a company are being recorded. Since that time, technology has evolved. The Internet has grown faster than privacy regulations can adapt through Legislative Acts. As described in the FAC, companies like Amazon (one of the largest data companies in the world) have complete control over the ability to surreptitiously record conversations, and they equally hold the power to program parameters into their website features to advise consumers of such recordation practices.

Consumers are increasingly interacting with Internet chats to ask questions that they otherwise would be asking over the telephone, which saves both consumers and companies time and resources. This is certainly a good thing, so long as the evolution of such technology and consumer communication habits do not result in an erosion of their privacy rights due purely from the happenstance of how they engage in such communications. From a common-sense perspective, the privacy interests are identical, because the communications are identical in both content and nature.

A core feature of the California Invasion of Privacy Act is that the California Legislature specifically codified an intention that it be broadly construed in favor of consumer privacy:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

Cal. Penal Code § 630. The statute envisions evolving technology, new ways companies may invade consumer privacy of "communications" (not telephone calls) through evolving means, and broadly proclaims that the goal is to protect consumer from the serious threats of privacy invasion. This is the broad policy goal of CIPA which governs its application to what types of technology are covered by the statute, what types of communications are considered confidential, and the clear guidepost for this foundational bedrock is the reasonable consumer of times in which the law is applied. The

plain language of § 632 envisions a broad swath of technological means by which communications may be recorded, by prohibiting the recordation of any confidential communication "by means of a telegraph, telephone, **or other device**, except a radio."  Cal. Penal Code § 632(a) (emphasis added). The Legislature in codifying the prohibition on such recordation limited its exclusions of what constitutes a confidential communication:

> 'confidential communication' means **any communication** carried on in circumstances as **may reasonably indicate that any party to the communication desires it to be confined to the parties thereto**, but excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, or in **any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded**.

Cal. Penal Code § 632(c) (emphasis added). Under this plain language, the only legal question is whether an objective reasonable consumer would expect their customer service communication with Amazon via the chat feature would not be overheard or recorded.

The law has drawn lines on the question of reasonableness all over but has never squarely addressed the issue in this context. For context, the starting point of the analysis is *Kearny*, where the Supreme Court unanimously observed that consumers have such an expectation of privacy for customer service telephone calls. 39 Cal. 4th at118 fn. 10. The Court went on to hold: "this provision does not absolutely preclude a party to a telephone conversation from recording the conversation, but rather simply prohibits such a party from secretly or surreptitiously recording the conversation, that is, from recording the conversation without first informing all parties to the conversation that the conversation is being recorded." *Id*. at 117-118. Class actions have been certified on this proposition. *See Raffin v. Medicredit, Inc.*, 2017 WL 131745, at *7-9 (C.D. Cal. Jan 3, 2017); *Zaklit v. Nationstar Mortgage LLC*, 2017 WL 3174901, at *5 (C.D. Cal. July 24, 2017).

The California Supreme Court recently spoke to its test for determining confidentiality:

> In *Flanagan*, we resolved a split of authority regarding what amounts to a 'confidential communication' that section 632, subdivision (a) protects from recording without the parties' consent. We agreed with the view that 'a conversation is confidential if a party to that conversation has an objectively reasonable expectation that the conversation is

not being overheard or recorded' and rejected an alternative interpretation of the statutory language that we considered less protective of the parties' privacy. In so holding, we emphasized that the preferred interpretation was more consistent with the protections conferred by sections 632.5, 632.6, and 632.7. These other provisions, we observed, all 'protect against interception or recording of any communication. When the Legislature determined that there was no practical means of protecting cordless and cellular phone conversations from accidental eavesdropping, it chose to protect all such conversations from malicious or intentional eavesdropping or recording, rather than protecting only conversations where a party wanted to keep the content secret.' We later added, 'Under the construction adopted here, the Invasion of Privacy Act is a coherent statutory scheme. It protects against intentional, nonconsensual recording of telephone conversations regardless of the content of the conversation or the type of telephone involved.'

*Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 193 (2021). The Supreme Court went on to broadly interpret Cal. Penal Code § 632.7. In *Ribas v. Clark*, 38 Cal. 3d 355 (1985), the Supreme Court held that the CIPA's prohibition on non-consensual monitoring applies not only to interception while a telephone communication is in transit, but also to monitoring on an extension phone. In *Flanagan*, the Supreme Court explained that § 632 protects from non-consensual recording any telephone call that a participant does not intend to be overheard or recorded (whether or not the content of the call is intended to remain secret) and that § 632.7 protects against intercepting or recording "any communication" involving a cellular phone or cordless phone. *Flanagan*, 27 Cal. 4th at 776. In *Kearney*, the Supreme Court affirmed the all-party consent requirement and held that it applies to out-of-state businesses that engage in telephone communications with California customers. Recording a protected communication without the consent of any party has been held to be "an affront to human dignity." *Friddle*, 16 Cal. App. 4th at 1660-61. The consistent theme throughout decades of law is a very broad reading and application of technology and communications.

The question remaining is how to interpret the requirement of confidentiality. A conversation is confidential, under CIPA, if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded. *Mezger v. Bick*, 280 Cal. App. 5th 76, 89 (2021). Section 632 protects both sound-based and symbol-based communications. *People v. Drennan*, 84 Cal. App. 4th 1349, 1355-56 (2000). Whether a communication is confidential turns on the reasonable expectations of parties judged by objective

1    standard and not by the subjective assumptions of the parties. *Deteresa v. ABC*, 121 F.3d 460, 463

2    (9th Cir. 1997). Even the "presence of others does not necessarily make an expectation of privacy

3    objectively unreasonable[.]" *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214

4    F. Supp. 3d 808, 841 (N.D. Cal. 2016).

5            The case law on the topic seems to be split between conversations which are public in nature

6    vs. private in nature (i.e., whether the conversation is overheard), as well as conversations which

7    consumers generally understand by default are recorded, vs. those which consumers do not

8    inherently have such an understanding. For instance, a closed loop telephone communication is

9    inherently private, and not by default recorded, and so that falls on the side of confidentiality.

10   *Kearney*, 39 Cal. 4th at 118 fn. 10. A teacher's classroom teaching in front of an entire class if

11   recorded by a student, is not confidential because the conversation is being overheard. *Evens v.*

12   *Superior Court*, 77 Cal. App. 4th 320, 323-24 (1999). Users of a social networking website whose

13   healthcare-related information and patient communications were collected by website's owner

14   using computer code installed on third-party websites, had an objectively reasonable expectation of

15   privacy as to those communications. *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218 (N.D.

16   Cal .2022). The reason for this ruling is because people do not inherently have an understanding

17   that their private web communications are subject to such tracking and recordation. On the other

18   hand, private email messages do not carry an expectation of privacy because the party sending the

19   message, in light of their basic knowledge of how email and message communications work, are

20   aware when sending the messages that a recorded copy will be retained by the recipient. *Campbell*

21   *v. Facebook Inc.*, 77 F.Supp.3d 836 (N.D. Cal. 2014).[8] The same is true, as argued by Defendant,

22   with fax messages and text messages.

23           Emails, text messages, and fax transmissions are the three examples given by Amazon in

24   support of their position regarding confidentiality; however, these are not analogous forms of

---

[8] Amazon's citation to dicta from *LoanMe* is not only inapplicable, but was made in a completely
different context not at issue here. *see* Mtn. at 15. *LoanMe* was undersigned counsel's case. This
issue was not briefed, and the case concerned § 632.7 relating to telephone calls, not § 632 relating
to chat communications, so there was no instance by which the Supreme Court was asked to look
at issues like this in issuing its decision.

communication to the case at bar. All three of these forms of communications are well understood by consumers to inherently and by axiom carry a recordation. A text message is transmitted by a telephone carrier, who maintains a copy of the text message's contents, as does the recipient, and anybody who has ever received a text message understands this to be the case. Therefore, a consumer understands that a text message is being "recorded" and therefore is not confidential. The same is true with respect to emails. Emails are maintained in the inbox of the recipient and recorded therein by the email server of the recipient's provider. They too are understood to be recorded and therefore are not confidential. Faxes are no different. A fax machine retains a recorded copy of all faxes sent to its number, and prints a copy. That is why such communications are not confidential.

Chat transcripts have no such technological mandate that is understood by consumers, because consumers do not interact on the back end of websites in the same way as they receive emails, texts, and faxes. They do not know how websites work. They do not know whether websites store or record copies of the communications. And they cannot be expected to know, because the truth is that some websites record chat transcripts, and others do not. How could a consumer possibly be on notice under such circumstances by default if they have no everyday interaction with the software, and if the software is capable of both recordation and a lack thereof? Amazon's position—that by default people should be held to know chat transcripts are recorded—is lazy. Amazon chose not to tell people that it records the conversations and inform consumers. Now Amazon, a company that interacts with most members of the public in some way, wants a free pass on a privacy invasion that is distinct from all of the examples it cites to as support.

This is a novel fact pattern, but the facts strongly support the recordation of a chat transcript should be likened to a telephone call, not to an email. And thus, it should be treated with the same expectation of privacy that the California Supreme Court affords consumers with telephonic customer service interactions. If Amazon wishes to avail itself of immunity from CIPA, it need only undertake the minimal effort of adding a disclaimer to its chat feature.

### 3. Amazon Intentionally Recorded Heinz's Chat Transcripts

There is no doubt Amazon intentionally recorded Heinz's chat conversations. After all,

1   Amazon programmed its own website, and hired the software engineers to design these parameters

2   into its functionality. Amazon does not dispute this, but rather hinges its position on a

3   misinterpretation of the requirements of willfulness under the law. The legal question as to whether

4   communications are confidential is inconsequential to the determination of whether the conduct

5   was intentional. The recording of a confidential conversation is intentional "if the person using the

6   recording equipment does so with the purpose or desire of recording a confidential conversation, or

7   with the knowledge to a substantial certainty that his use of the equipment will result in the

8   recordation of a confidential conversation." *People v. Super. Ct. (Smith)*, 70 Cal. 2d 123, 134

9   (1969). It is facially implausible for Amazon to have unintentionally recorded Heinz's chats, and

10   the chats with other consumers, after it purchased/programmed and implemented software to do so.

11       **B. Heinz's UCL Unlawful Prong Claim for Injunctive Relief Should be Upheld**

12       Amazon's Motion conflates the proper legal standards for standing under the UCL. Heinz's

13   sole remedy pled under the UCL is for public and class-wide injunctive relief, a remedy which he

14   has standing to assert, so long as his Penal Code § 632 claim is upheld. In order to satisfy the

15   "unlawful" prong of the UCL, a consumer must simply allege a violation of another law. *See*

16   *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 558 (9th Cir. 2010); *Ingels v. Westwood*

17   *One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005). Heinz is only seeking injunctive

18   relief and need not satisfy the UCL's requirements for seeking restitution. *White v. Trans Union,*

19   *LLC*, 462 F. Supp. 2d 1079, 1083 (C.D. Cal. 2006) (holding no need for lost money or property

20   "where Plaintiffs seek only injunctive relief."). The cases Amazon cites are inapplicable and seem

21   to be based on a misunderstanding of the allegations.

22   **V.    CONCLUSION**

23       The Court should deny Amazon's motion to transfer and motion to dismiss. If the Court

24   grants any aspect of Amazon's motion to dismiss, Heinz requests leave to amend. *See* Fed. R. Civ.

25   P. 15(a); *see also Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014).

26   Dated: June 9, 2023                  Respectfully submitted,

27

28

1

CROSNER LEGAL, P.C.

2

By: _/s/___Craig W. Straub_____
CRAIG W. STRAUB

3

4

Zachary M. Crosner (SBN 272295)
Chad A. Saunders (SBN 257810)
Craig Straub (SBN 249032)
**CROSNER LEGAL, P.C.**
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
zach@crosnerlegal.com
chad@crosnerlegal.com
craig@crosnerlegal.com

5

6

7

8

9

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Thomas E. Wheeler (SBN 308789)
Meghan E. George (SBN 274525)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
twheeler@toddflaw.com
mgeorge@toddflaw.com

10

11

12

13

14

15

16

*Attorneys for Plaintiff, and all others similarly situated*

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on June 9, 2023, I electronically filed the foregoing with the Clerk of

3  the Court using the CM/ECF system which will send notification of such filing to the e-mail

4  addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the

5  foregoing document or paper via the United States Postal Service to the non-CM/ECF participants

6  indicated on the Electronic Mail Notice List.

7

I certify under penalty of perjury under the laws of the United States of America that the

8  foregoing is true and correct. Executed on June 9, 2023.

9

10

*s/  Craig W. Straub*

CRAIG W. STRAUB

11

CROSNER LEGAL, P.C.

12  9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210

13  Tel: (866) 276-7637
Fax: (310) 510-6429

14  craig@crosnerlegal.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28