1
2
3
4
5
6

The Honorable Jamal N. Whitehead

7

UNITED STATES DISTRICT COURT

8

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

BRIAN HEINZ individually and on behalf
of all others similarly situated,

No. 2:23-cv-01073-JNW

11

Plaintiff,

**PLAINTIFF'S OPPOSITION TO
DEFENDANT AMAZON.COM, INC'S
RENEWED MOTION TO DISMISS**

12

v.

13
14

AMAZON.COM, INC. and DOES 1 to 10,
inclusive, and each of them,

NOTE ON MOTION CALENDAR:
October 13, 2023

Defendants.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

## TABLE OF CONTENTS

I.         INTRODUCTION ...............................................................................................1

II.       STATEMENT OF FACTS ..................................................................................3

    A.    Heinz's Claims.......................................................................................3

    B.    Procedural History ................................................................................3

III.      AMAZON'S MOTION TO DISMISS SHOULD BE DENIED ...........................4

    A.    California Law Applies...........................................................................4

        1.    Amazon Cannot Argue That Washington Law Differs from California Law Because It Conceded in Open Court They Are The Same...................................................................................................4

        2.    The Court Should Not Decide Choice of Law Issues at this Stage of Litigation .................................................................................................5

        3.    California Law Should Apply If the Court Chooses to Conduct a Choice of Law Analyses ...................................................................6

            a.    California Has a Strong Fundamental Policy in Favor of Applying CIPA ......................................................................6

            b.    Applying Washington Law Conflicts and Violates California Policies............................................................................7

    B.    Heinz's CIPA Claims Should be Upheld................................................9

        1.    Amazon's Vague Privacy Notice is Not Conspicuous, and Does Not Comply with CIPA ...................................................................10

        2.    A Customer Service Chat on a Cellular Telephone Carries the Same Expectation of Privacy as a Customer Service Telephone Call.................12

        3.    Amazon Intentionally Recorded Heinz's Chat Transcripts .....................19

    C. Heinz's UCL Unlawful Prong Claim for Injunctive Relief Should be Upheld ...........20

IV.      CONCLUSION..................................................................................................21

<u>TABLE OF AUTHORITIES</u>

**CASES**

*Adler v. Community*, No. 2:21-cv-02416-SB-JPR,

    2021 U.S. Dist. LEXIS 201644 (C.D. Cal. Aug. 2, 2021) ........................................................ 9

*Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1 (2001) .................................................... 9

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ...................................... 11

*Britton v. Co-op Banking Group*, 4 F.3d 42 (9th Cir. 1993) .................................................... 4, 5

*Brown v. Google LLC*, No. 4:20-cv-3664-YGR,

    2023 U.S. Dist. LEXIS 139895 (N.D. Cal. Aug. 7, 2023) ................................................ 18, 22

*Byars v. Tire*, No. 5:22-cv-01358-SSS-KKx,

    2023 U.S. Dist. LEXIS 22337 (C.D. Cal. Feb. 3, 2023) ........................................................ 9

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) ................................................ 21

*Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014) ...................................... 18, 20

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) .................................................... 6, 19

*Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000 (N.D. Cal. 2018) ................................................ 17

*Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116 (W.D. Wash. 2012) ................................ 8

*Erceg v. LendingClub Corp.*, 475 F. Supp. 3d 1071 (N.D. Cal. 2020) ...................................... 7

*Faulkner v. ADT Sec. Services, Inc.*, 706 F.3d 1017 (9th Cir. 2013), ...................................... 19

*Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002) .............................................................. *passim*

*Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155 (C.D. Cal. 2012) ........................................ 6

*Friddle v. Epstein*, 16 Cal. App. 4th 1649 (1993) ...................................................................... 12

*Gen. Signal Corp v. MCI Telecomms. Corp.*, 66 F3d 1500 (9th Cir. 1995) ................................ 4

*Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019) .................... 12

*Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wash. 2d 107 (1987). .................................... 6

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001) ...................................... 4

*In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224 (N.D. Cal. 2012) ...................................... 5

*In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ........................ *passim*

*In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK,

2013 U.S. Dist. LEXIS 172784 (N.D. Cal. Sep. 26, 2013) .................................. 17, 22

*In re Yahoo Mail Litig.*, 308 F.R.D. 577 (N.D. Cal. 2015)........................................ 7

*Javier v. Assurance IQ, LLC*, No. 21-16351,

2022 U.S. App. LEXIS 14951, 2022 WL 1744107  (9th Cir. May 31, 2022)............... 9, 13, 19

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006) ...................... 2, 7, 12, 13

*Kight v. Cashcall*, 200 Cal. App. 4th 1377 (2011) .................................................. 3, 12

*Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342 (2012)................................... 22

*Klein v. Facebook, Inc.,* 580 F. Supp. 3d 743 (N.D. Cal. 2022)................................. 22

*Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310 (2011).............................................. 21

*McKee v. GM Co.*, 601 F. Supp. 3d 901 (W.D. Wash. 2022)...................................... 8

*Mikron Indus., Inc. v. Hurd Windows & Doors, Inc.*,

2007 WL 3033933 (W.D. Wash. Oct. 12, 2007) ...................................................... 5

*Nationwide Biweekly Admin., Inc. v. Superior Court*, 9 Cal. 5th 279 (2020).............. 22

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ............................... 10

*O'Hara v. Teamsters Local 856*, No. C 92-1262 FMS,

1997 WL 1025517 (N.D. Cal., Feb. 24, 1997) ....................................................... 5

*People v. Gibbons,* 215 Cal. App. 3d 1204 (1989).................................................... 9

*People v. Nakai*, 183 Cal. App. 4th 499 (2010)..................................................... 9, 18

*People v. Super. Ct. (Smith)*, 70 Cal. 2d 123 (1969)................................................. 21

*Quigley v. Yelp, Inc.*, 2018 WL 7204066 (N.D. Cal. Jan. 22, 2018) ......................... 19

*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 19

*Ribas v. Clark*, 38 Cal. 3d 355 (1985) ................................................................. 8, 9

*Rice v. Dow Chemical Co.*, 124 Wn. 2d 205 (Wash. 1994)........................................ 9

*Ritch v. Am. Honda Motor Co.*, No. 3:21-cv-05706-DGE,

2022 U.S. Dist. LEXIS 81808 (W.D. Wash. May 5, 2022)...................................... 8

*Rubio v. Capital One Bank*, 613 F.3d 1195 (9th Cir. 2010) ..................................... 12

*See Klein v. Facebook, Inc*., 580 F. Supp. 3d 743 (N.D. Cal. 2022) .......................... 3

*Seizer v. Sessions*, 132 Wash. 2d 642 (1997)........................................................... 6

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021) ........................................................... 11

*Singh v. Edwards Lifesciences*, 151 Wn. App. 137 (Wash. Ct. App. 2009) ................................... 7

*Smith v. LoanMe, Inc.*, 11 Cal. 5th 183 (2021) ............................................................................. 9

*Sonner v. Schwabe N. Am., Inc.*, 2015 WL 13307076 (C.D. Cal. Nov. 18, 2015) ........................ 6

*State v. Bilgi*, 19 Wn. App. 2d 845 (Wash. Ct. App. 2021),

    *review denied*, 199 Wn.2d 1002 (Wash. 2022) .......................................................................... 8

*Swarts v. Home Depot, Inc.*, No. 23-cv-0995-JST,

    2023 U.S. Dist. LEXIS 153477 (N.D. Cal. Aug. 30, 2023) ........................................................ 17

*Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017) .......................................................................... 11

*TBG Ins. Servs. Corp. v. Super. Ct.*,. 96 Cal. App. 4th 443, 452 n.8 (2002) .............................. 17

*TekVisions, Inc. v. Hartford Cas. Ins. Co.*, 2017 WL 2574022 (W.D. Wash. June 13, 2017) ....... 5

*Walter v. Hughes Communications, Inc.*, 682 F. Supp. 2d 1031 (N.D. Cal. 2010) ...................... 9

*Woodward v. Taylor*, 184 Wash. 2d 911 (Wash. 2016) ................................................................. 6

*Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) ................................. 9

**STATUTES**

Cal Penal Code § 637.2 ................................................................................................................. 8

Cal. Const., art. I, § 1 .................................................................................................................... 7

Cal. Penal Code § 630 ................................................................................................................. 14

Cal. Penal Code § 632 ................................................................................................................. 14

California Civil Code § 3513 ......................................................................................................... 7

California's Invasion of Privacy Act ("CIPA") ............................................................................... 1

California's Unfair Competition Law ("UCL") .............................................................................. 1

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. ("UCL") ............. 4

Wash. Rev. Code § 9.73.060 ......................................................................................................... 8

Wash. Rev. Code Ann. § 9.73.030(1) ............................................................................................ 8

Washington Privacy Act ("WPA") ................................................................................................. 8

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 15 ............................................................................................. 22

1   Plaintiff Brian Heinz ("Heinz") submits this opposition to Defendant Amazon.com, Inc.'s

2   ("Defendant" or "Amazon") renewed Motion to dismiss (ECF No. 52) ("Mtn."). The declaration of

3   Craig W. Straub ("Straub Decl.") in support of this opposition is concurrently filed.

4   **I.     INTRODUCTION**

5   Amazon moves this Court to dismiss Plaintiff's First Amended Complaint (ECF No. 21)

6   ("FAC"), taking several misguided positions which should be rejected. Plaintiff alleges that

7   Amazon collects valuable conversational "live chat" data that occurs between it and its customers

8   on Amazon's website in real time. Amazon argues this case is merely a "copycat" and freely taking

9   this information without consent is not actionable.

10   With chat features and artificial intelligence being used at an alarmingly increased rate, in

11   lieu of traditional telephonic communications of the same nature, safeguarding consumer privacy

12   is not only prudent but necessary to avoid a snowball effect. Heinz brings this action on behalf of

13   California consumers for violations of California's Invasion of Privacy Act ("CIPA") and

14   California's Unfair Competition Law ("UCL").

15   Amazon argues this Court must dismiss Plaintiff's claims because Washington law governs

16   them, and not California law, despite the fact that Amazon admitted <u>on the record in open court</u> that

17   California and Washington law are identical with respect to Plaintiff's claims. Further, the choice

18   of law question is fact intensive and typically deferred until class certification. Even if conflict of

19   law principles are applied, California and Washington privacy laws fundamentally conflict. For

20   example, Washington law contains a stringent injury requirement unlike California. California's

21   fundamental policy to protect Californians from companies that secretly record and collect

22   conversational data strongly weighs in favor of applying California law.

23   Next, Amazon argues that the conversations it recorded are not confidential, so it is allowed

24   to record them under CIPA. Amazon fails to acknowledge a conversation is confidential where a

25   party to that conversation has an objectively reasonable expectation that the conversation is not

26   being recorded. *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002).[1]

27

28   _____
[1] Internal citations, quotations, brackets, and quotes are omitted throughout unless otherwise indicated.

> California consumers are accustomed to being informed at the outset of a telephone call whenever a business entity intends to record the call...in the absence of such an advisement, a California consumer reasonably would anticipate that such a telephone call is not being recorded …

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 118 fn. 10 (2006). Heinz asserts these same expectations of privacy hold true with respect to online chat conversations, which are equivalent to telephone conversations with customer service agents, as they relate to the same topics and content. Tellingly, Amazon could have easily provided a notice at the outset of the conversation of Amazon's intent to record, but did not.

Online chats happen in "real-time" and are not accessible to the consumers after the conversations. Thus, chat conversations are not akin to emails messages as Amazon contends. Accordingly, numerous courts hold that consumers have an expectation of privacy in these private electronic conversations. *See infra* at 8-9. In fact, the Ninth Circuit held consumers have an expectation of privacy in their website "browsing histories." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 596, 598 (9th Cir. 2020).

Amazon agrees it recorded the conversations but argues it "did not intend to record confidential" part. Not only does this argument defy common sense, but it directly contradicts Heinz's allegations and controlling law. Heinz alleges Amazon intentional records confidential communications because the data is "an untapped data goldmine." FAC, ¶ 19. The communications were confidential because "[a]t no point did Plaintiff have a reasonable expectation that any of the conversation with Defendant were being recorded" as there was not advisory that the chats were recorded unlike numerous other websites *Id.*, ¶¶ 21, 23.

Third, Amazon claims its vague and hidden "Privacy Notice" informs consumers it records the conversations. The notice does not say that, is not conspicuously disclosed, and does not comply with CIPA. To put a consumer on "adequate notice" that a conversation is being recorded, there must be an "explicit advisement" at the "outset" of the conversation. *Kight v. Cashcall*, 200 Cal. App. 4th 1377, 1399 (2011). The hidden notice does not do this.

Lastly, Amazon claims Heinz has not suffered an injury even though it freely reaped a "treasure trove of conversational data" from him. When a company secretly takes valuable data

1  from a consumer, injury occurs. *See Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 803 (N.D. Cal.
2  2022). Amazon's Motion should be denied.

3  **II.    STATEMENT OF FACTS**

4  **A. Heinz's Claims**

5      In July 2022 through September 2022, Heinz, using his cellular phone, visited Amazon's
6  website and had conversations with Amazon via the chat feature on its website. FAC, ¶ 10. The
7  conversations were confidential in nature. *Id.*, ¶¶ 15, 20. At no time during these conversations did
8  Amazon disclose to Heinz that it was recording the conversations. Amazon, however, did in fact
9  record its conversations with Heinz. *Id.*, ¶ 11.

10     As one of the largest data aggregators in the world, it is Amazon's practice to record all
11  communications that occur on its website and use the recorded conversations for financial gain. *Id.*,
12  ¶¶ 12, 20. Published research has found that data miners like Amazon secretly use recorded chat
13  conversation for data mining, marketing, and advertising purposes. *Id.*, ¶¶ 18-19. "This rise of
14  business messaging is set to produce a treasure trove of conversational data – chat history and
15  context – that business can begin to use and gain a more complete and personal view of their
16  customers. ***It's the juiciest of low-hanging fruit***." *Id.*, ¶ 19 (emphasis added).

17     The recorded conversations were confidential because at no point did Heinz have a
18  reasonable expectation that any of the conversations with Amazon were being recorded because at
19  no time did Amazon inform Heinz it was recording the conversations. *Id.*, ¶ 21; *see also id.*, ¶¶ 13-
20  16. Unlike several other prominent websites, there was no pre-conversation notice that the
21  conversations were being recorded. *Id.*, ¶¶ 22-26. Such warnings are ubiquitous today. *Id.*, ¶ 30.
22  Thus, Heinz brings claims for violation of section 632 of CIPA, and California's Unfair
23  Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), on behalf of a California class.

24  **B. Procedural History**

25     Plaintiff filed his initial complaint in California Superior Court for the County of Yolo on
26  January 11, 2023. ECF No. 1-1. On February 15, 2023, Defendant removed the case to the Federal
27  District Court for the Eastern District of California. ECF No. 1. On May 19, 2023, Defendant moved
28  the Eastern District of California to transfer venue to this Court, or in the alternative to dismiss.

ECF No. 24. The Court heard the motion, after full briefing, on July 10, 2023. ECF No. 29. The Eastern District of California declined to address Amazon's motion to dismiss and transferred venue to this Court. ECF No. 30 at 13. Amazon then filed a renewed Motion to dismiss, making the same arguments it raised in California. ECF No. 52.

## III.   AMAZON'S MOTION TO DISMISS SHOULD BE DENIED

### A.  California Law Applies

#### 1.  Amazon Cannot Argue That Washington Law Differs from California Law Because It Conceded in Open Court They Are The Same

A party is precluded from "taking an inconsistent position in the same litigation if (1) the court actually adopted the inconsistent statement earlier in the litigation . . . or (2) the change in the position amounts to playing 'fast and loose' with the court." *Gen. Signal Corp v. MCI Telecomms. Corp.*, 66 F3d 1500, 1505 (9th Cir. 1995); *see also Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001); *Britton v. Co-op Banking Group*, 4 F.3d 42, 744 (9th Cir. 1993). In this case, both prongs are met, and Amazon should not be permitted to argue that Washington law precludes Plaintiff's claims.

Regarding the first prong, before the Eastern District of California, Amazon admitted in open court that Washington law "provides the same relief that the plaintiff seeks in this case. It does not require actual injury." Straub Decl., Ex. A at 8. Judge Shubb adopted Amazon's position. ECF No. 30 at 11-12. Amazon is therefore precluded under judicial estoppel from arguing to the contrary and California law applies with equal force as Washington. *See Hamilton*, 270 F.3d at 782 ("Judicial … precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position.").

But even if this Court does not hold that the Eastern District of California adopted Defendant's prior position, it should still hold that Defendant is estopped from arguing that Washington law differs from California law. A defendant cannot play "fast and loose" with the court when it would benefit twice by taking inconsistent positions. *O'Hara v. Teamsters Local 856*, No. C 92-1262 FMS, 1997 WL 1025517, at *3 (N.D. Cal., Feb. 24, 1997). Here, Amazon benefitted from taking the position that Washington and California law do not differ because that position, in part, resulted in the transfer of this action from California to Washington. Amazon will benefit from

taking the contrary position because, if this Court agrees with Amazon, it will obtain a dismissal of Plaintiff's claims. Thus, Amazon will benefit twice from taking inconsistent positions, and is playing fast and loose with the Court. *Id.* Amazon should be judicially estopped from doing so. *See Britton*, 4 F.3d at 744.

## 2. The Court Should Not Decide Choice of Law Issues at this Stage of Litigation

The Court need not conduct a choice of law analysis at this stage of the litigation. The choice of law inquiry raises complicated, fact-intensive questions better answered at later stages of the litigation. *See, e.g.*, *Mikron Indus., Inc. v. Hurd Windows & Doors, Inc.*, No. C07-0532RSL, 2007 WL 3033933, at *2 (W.D. Wash. Oct. 12, 2007) ("the record is insufficiently developed to provide the necessary facts to permit the Court to conduct a choice of law analysis. Accordingly, the Court finds that a conflict of law analysis would be premature at this point in the proceedings."); *TekVisions, Inc. v. Hartford Cas. Ins. Co.*, No. 16-1946-RAJ, 2017 WL 2574022, at *2 (W.D. Wash. June 13, 2017) ("The Court agrees with Hartford that engaging in a choice of law analysis would be premature, as the relevant legal analysis requires determining whether Washington or California has the most significant relationship to the conflict and parties. This analysis requires further development of the record.") (internal citation omitted); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012) ("Since the parties have yet to develop a factual record, it is unclear whether applying different state consumer protection statutes could have a material impact on the viability of Plaintiffs' claims."); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012) ("Until the Parties have explored the facts in this case, it would be premature to speculate about whether the differences in various states' consumer protection laws are material in this case."); *Sonner v. Schwabe N. Am., Inc.*, No. EDCV1501358VAPSPX, 2015 WL 13307076, at *9 (C.D. Cal. Nov. 18, 2015) ("A detailed choice-of-law analysis would be inappropriate" on a motion to strike).

Indeed, a case cited relied upon heavily by Amazon, *In re Google Inc. Gmail Litig.,* the court held that it "cannot, at this stage, determine whether there are differences with respect to the scope of liability." No. 13-MD-02430-LHK, 2013 U.S. Dist. LEXIS 172784, at *70-73 (N.D. Cal. Sep. 26, 2013) ("Accordingly, the Court defers resolution of the choice of law issues until the class certification phase and DENIES Google's Motion to Dismiss on the basis of choice of law[.]").

### 3. California Law Should Apply If the Court Chooses to Conduct a Choice of Law Analyses

Amazon argues that its Conditions of Use require the application of Washington law. MTD at 6. Amazon claims the California and Washington privacy laws are the same but ignores glaring fundamental differences which will deprive Hienz and the California class from their day in court. Amazon was forced to make this argument in order to have the action transferred to this Court. *See supra*. It now backpedals arguing that Washington law must apply.

As an initial matter, Plaintiff's California claims under CIPA and the UCL arise in tort rather than contract. "[A] choice of law provision in a contract does not govern tort claims arising out of the contract." *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wash. 2d 107, 159 (1987). "Violations of the right to privacy have long been actionable at common law." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 598. CIPA was enacted to codify this common law tort. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1118 (9th Cir. 2020).

Because Plaintiff's claims arise in tort, the Court should first "identify an actual conflict of law." *Woodward v. Taylor*, 184 Wash. 2d 911, 917 (Wash. 2016). "An actual conflict of law exists where ***the result of an issue is different*** under the laws of the interested states." *Id.* at 918 (emphasis added) (following *Seizer v. Sessions*, 132 Wash. 2d 642, 648 (1997)). If a conflict exists, then the court must "evaluate the contacts with each potentially interested state and then, if balanced, evaluate the public policies and governmental interests of the concerned states." *Singh v. Edwards Lifesciences*, 151 Wn. App. 137, 144 (Wash. Ct. App. 2009).

Here, there is a conflict, and the Court must look to each states' interest. Heinz is a citizen of California and brings this action on behalf of Californians for conversations that emanated from California. Further, California has a strong public policy in favor of applying California law. Thus, the Court should apply California law.

### a. California Has a Strong Fundamental Policy in Favor of Applying CIPA

California's Constitution and judicial decisions have declared a strong and fundamental public policy of protecting Californian's right to privacy. California Civil Code § 3513 provides that "a law established for a public reason cannot be contravened by a private agreement." The California Supreme Court has definitively linked the constitutionally protected right to privacy within the purpose, intent, and specific protections of CIPA. Penal Code § 632. Cal. Const., art. I,

§ 1 "was enacted in part specifically to protect California from overly intrusive business practices that were seen to pose a significant and increasing threat to personal privacy." FAC, ¶ 44 (quoting *Kearney*, 39 Cal. 4th at 125). The wholesale waiver of CIPA violates this strong public policy.

The Court should also consider the fact that invasion of privacy claims "should be governed by and decided under the wiretapping laws of the state in which the class member resides." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 605 (N.D. Cal. 2015). "[W]hen faced with two recording laws, a court applies the law of the state where the aggrieved party whose privacy rights were invaded was located when recorded, not the law of the state where the recording party was located." *Erceg v. LendingClub Corp.*, 475 F. Supp. 3d 1071, 1078 (N.D. Cal. 2020).

### b. Applying Washington Law Conflicts and Violates California Policies

*First*, unlike the Washington Privacy Act ("WPA"), CIPA does not require a showing of actual damages: "It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." Cal Penal Code § 637.2©; *Ribas v. Clark*, 38 Cal. 3d 355, 365 (1985) (CIPA "authorizes civil awards of $ 3,000 for each violation of the Privacy Act despite a party's inability to prove actual injury."). The WPA mandates injury to the plaintiff's business, person, or reputation. Wash. Rev. Code § 9.73.060; *see also McKee v. GM Co.*, 601 F. Supp. 3d 901, 909 (W.D. Wash. 2022) ("Plaintiffs' concerns that their data could be accessed in the future by a third party may or may not be justified. Simply put, however, the unknown future is insufficient to adequately plead injury under the WPA.").

*Second*, it appears the WPA may only apply to individuals and not corporations. Wash. Rev. Code Ann. § (1)(a) ("[p]rivate" communications are "transmitted … between two or more individuals …"). CIPA does not have this limitation. Cal Penal Code § 632(b) (defining "person" as a "business association, partnership, corporation, limited liability company, or other legal entity …"). This District has noted "the WPA requires a communication between at least two individuals." *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1129 (W.D. Wash. 2012).

*Third*, the WPA does not apply to communications involving electronic data. *Id.* ("[D]ata cannot be considered a communication under the WPA"). The Washington Court of Appeals has specifically noted that the WPA does not apply to "computer software" because it is "not an actor with an agency" under Wash. Rev. Code Ann. § 9.73.030(1). *State v. Bilgi*, 19 Wn. App. 2d 845

---

(Wash. Ct. App. 2021), *review denied*, 199 Wn.2d 1002 (Wash. 2022); *see also Ritch v. Am. Honda Motor Co*., No. 3:21-cv-05706-DGE, 2022 U.S. Dist. LEXIS 81808, at *10 (W.D. Wash. May 5, 2022) ("Because it is only the infotainment system without agency that intercepts, records, and stores the communications, the FAC fails to assert sufficient facts to establish Honda is engaging or has engaged in a WPA violation.").

Unlike the WPA, CIPA predicts advancing technology, new ways companies may invade consumer's "communications" (not just telephone calls), and broadly states that the goal of the statute is to protect consumers from the threats of privacy invasion: "The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping …" Cal. Penal Code § 630. CIPA prohibits anyone form recording a conversation where there is a reasonable expectation of privacy whether the communication is by means of a "telegraph, telephone, or ***other device*** …" Cal Penal Code § 632(a).

Courts interpreting CIPA consistently hold that it applies to internet communications because "all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA." *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *4-5 (9th Cir. May 31, 2022) (citing *Ribas*, 38 Cal. 3d at 359 and *Smith v. LoanMe, Inc*., 11 Cal. 5th 183, 199-200 (2021)); *see also e.g.*, *People v. Nakai*, 183 Cal. App. 4th 499, 517 (2010) ("[T]his court previously concluded that 'communication,' for purposes of section 632, includes conduct, i.e., the definition is not limited to oral or written dialogues.") (following *People v. Gibbons,* 215 Cal. App. 3d 1204, 1209 (1989)); *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 598 ("Plaintiffs have adequately alleged harm to these privacy interests [under CIPA]. Plaintiffs alleged that Facebook continued to collect their data after they had logged off the social media platform, in order to receive and compile their personally identifiable browsing history."); *Adler v. Community*, No. 2:21-cv-02416-SB-JPR, 2021 U.S. Dist. LEXIS 201644, at *15 (C.D. Cal. Aug. 2, 2021) (Section 632 under CIPA applies to "text messages" if there is no "adequate notice" the text messages were "being surveilled."); *Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1080 (C.D. Cal. 2021) ("Courts agree, and the parties do not contest, that CIPA [] applies to communications conducted over the internet."); *Byars v. Tire*, No. 5:22-cv-01358-SSS-KKx, 2023 U.S. Dist. LEXIS 22337, at *13-14 (C.D. Cal. Feb. 3, 2023) ("[C]ourts have applied § 632.7 to

internet-based communications[.]").

These are significant policy reasons for the Court to reject Amazon's request to apply Washington law. For example, the Washington Supreme Court held "statutes of repose" can "raise a conflict of substantive law." *Rice v. Dow Chemical Co.*, 124 Wn. 2d 205, 212 (Wash. 1994). Similarly, limiting a plaintiff's damages through a choice of law provision can "conflict[] with a fundamental policy set down in California law." *Walter v. Hughes Communications, Inc.*, 682 F. Supp. 2d 1031, 1042 (N.D. Cal. 2010). Even limiting "enhanced remedies" though a choice of law provision creates a "substantial" conflict that violates California public policy. *Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 18 (2001). Here, Heinz's claim under CIPA will be fundamentally impaired if Washington law applies.

Accordingly, there is a conflict of law, and California public policy directs that California law should apply to Heinz's and the California class members' claims.

### B.  Heinz's CIPA Claims Should be Upheld

Amazon's Motion cites to some of the correct legal standards governing California Penal Code § 632, but fundamentally misapplies those standards, resulting in an erroneous conclusion. The sole legal question in this Motion is—will the California Supreme Court, as it did with customer service telephone calls, hold that consumers have a reasonable expectation of privacy that their customer service chat discussions with a company are not being recorded, where the company has not advised them that the chats are being recorded?  If the answer is "yes" which Heinz believes it will be, then his claims should be upheld in full. With chat features and AI being used at an alarmingly increased rate, in lieu of traditional telephonic communications of the same nature, safeguarding consumer privacy in this minimally burdensome respect out of the gate is not only prudent but necessary to avoid a snowball effect.

As discussed above, Heinz alleges he engaged in customer service chats with Amazon through its chat feature on its website. The feature could have[2] but did not disclose the

---

[2] Amazon programmed and designed its website on which the chat bots engage in these discussions with consumers. All it would need to do is add a conspicuous disclaimer, which is industry standard anyways, telling people that the chat is being recorded. *See* FAC at ¶¶ 22-26. This could be done as easily as a one button click that takes one second to initiate, just like the recording feature present when using Zoom.

communications would be recorded. Heinz's reasonable belief was he would not be recorded, and the sole purpose of the conversations was to assist with Heinz's immediate customer service interaction, much like a phone call where a customer asks questions with a customer service agent.

### 1. Amazon's Vague Privacy Notice is Not Conspicuous, and Does Not Comply with CIPA

*First*, it is binding law in the Ninth Circuit that a browse-wrap agreement is neither conspicuous notice nor an enforceable agreement. *See Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1176-77 (9th Cir. 2014) ("Unlike a clickwrap agreement, a browse wrap agreement does not require the user to manifest assent to the terms and conditions expressly"). "[M]erely clicking on a button on a webpage . . . does not signify a user's agreement to anything." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858 (9th Cir. 2022). Similarly, sign-in wrap agreements are subject to binding precedent holding an inconspicuous hyperlink in small point font does not suffice as a manifestation of consumer assent to its terms. *Id*.; *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 466 (2021). For similar reasons as argued above regarding conspicuous notice, Heinz cannot be bound by the Privacy Notice as a basis for his "consenting" to have his chat transcripts recorded.

*Second*, if a user was to click on the hidden Privacy Notice hyperlink when they sign in, create an account, or make a purchase, he would be confronted with 9 pages of single-space text which contains 3,479 words, 161 paragraphs, and 393 lines. Straub Decl., ¶ 6. The Privacy Notice[3] contains an overwhelming 74 embedded hyperlinks. *Id.* Several of these hyperlinks do not even function. *Id.* For example, hyperlinks in the sentences that state "Click here to see examples of what we collect" and "What Personal Information About Customers Does Amazon Collect?" do not work. *Id.* The Privacy Notice does not state that it records the chats which occur on its website. A search for "recordings" in the Privacy Notices submitted by Amazon results in sentences which are unrelated to the chats: "voice recordings when you speak to Alexa." *Id*.

*Third*, even if the Court disagrees, this still fails the actual test for consent under California law interpreting CIPA. Established law holds that consent from a consumer to waive consumer

---

[3] Amazon submits Privacy Notice in connection with the current Motion which is different than the Privacy Notice it previously submitted with its motion to transfer in the Eastern District of California. *See* Straub Decl., ¶ 5.

---

privacy rights is assessed on a heightened basis under the clear and conspicuousness standards beyond contract law. *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017); *Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019); *Rubio v. Capital One Bank*, 613 F.3d 1195 (9th Cir. 2010) (clear and conspicuous means "reasonably understandable" and "readily noticeable to the consumer").

The California Supreme Court has held that an appropriate warning the call is being recorded, must be given "at the outset of the conversation" and CIPA prohibits the recording of any conversation "without first informing all parties to the conversation that the conversation is being recorded." *Kearney*, 39 Cal. 4th at 118.[4] "California must be viewed as having a strong and continuing interest in the full and vigorous application of [CIPA] prohibiting the recording of telephone conversations without the knowledge or consent of all parties to the conversation." *Id.* at 125. The California Court of Appeal observed:

> But the high court rejected the Court of Appeal's suggestion that under California law there was no need for an **explicit advisement** regarding the secret recording because 'clients or customers of financial brokers ... "know or have reason to know" that their telephone calls with the brokers are being recorded.'

*Kight v. Cashcall*, 200 Cal. App. 4th 1377, 1399 (2011) (emphasis added) (citing *Kearney*). Thus, to put a consumer on "adequate notice" that the call is being monitored or recorded, binding law holds there must be an "explicit advisement." Consent under CIPA to record a communication can only be obtained through a clear and conspicuous explicit recording advisory made at the outset of a communication. Recording a protected communication without the consent of any party has been held to be "an affront to human dignity." *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1660-61 (1993).

Amazon has no conspicuous disclosure. It does not come close to the standards required under California law, which is troubling because Amazon employs thousands of software engineers and hundreds of lawyers, and is one of the largest data aggregation companies in the world. It could easily place a disclosure in bold letters at the top of the chat screens, or add a simple clickwrap "I

---

[4] *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1661-1662 (1993) (the Privacy Act is violated at the moment the party begins making a secret recording, and "[n]o subsequent action or inaction is of consequence to this conclusion.").

1  agree this chat may be recorded" at the beginning of each chat. This would have taken very little

2  effort.

3      Amazon's position is that Heinz knew his communications were being recorded. This is not

4  accurate, as he had pled the exact opposite, and as Amazon has provided no evidence Heinz was

5  provided an explicit advisory at the outset of the communication that his protected communication

6  was being recorded. Accordingly, there was no sufficient notice, and there was no consent.

7      **2.  A Customer Service Chat on a Cellular Telephone Carries the Same Expectation of Privacy as a Customer Service Telephone Call**

8      "California clearly has an interest in protecting the privacy of telephone conversation of

9  California residents while they are in California." *Kearney*, 39 Cal. 4th at 104. A conversation is

10  confidential where a party to that conversation has an objectively reasonable expectation that the

11  conversation is not being overheard or recorded. *Flanagan v. Flanagan*, 27 Cal. 4th at 775. As the

12  California Supreme Court observed:

13  > California consumers are accustomed to being informed at the outset of a telephone
14  > call whenever a business entity intends to record the call, it appears equally plausible
     > that, in the absence of such an advisement, a California consumer reasonably would
15  > anticipate that such a telephone call is not being recorded, particularly in view of the
     > strong privacy interest most persons have with regard to the personal financial
16  > information frequently disclosed in such calls.

17  *Kearney*, 39 Cal. 4th at 118 fn. 10. Heinz asserts that these same expectations of privacy hold true

18  for California consumers with respect to website chats, which are a modern equivalent to telephone

19  conversations with customer service agents, as they relate to the same topics and content. The Ninth

20  Circuit agrees that such communications fall within the gambit of CIPA protection. *Javier v.*

21  *Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022); *In re Facebook Inc. Internet*

22  *Tracking Litig.*, 956 F.3d at 599 (holding "Plaintiffs have sufficiently alleged a clear invasion of

23  the historically recognized right to privacy" based on Facebook's website recording practices).

24      Seventeen years have passed since the California Supreme Court unanimously held that

25  consumers expect to be told at the outset of a conversation if their customer service telephone

26  communications with a company are being recorded. Since that time, technology has evolved. The

27  Internet has grown faster than privacy regulations can adapt. As described in the FAC, companies

28

---

like Amazon (one of the largest data companies in the world) have complete control over the ability to surreptitiously record conversations, and they equally hold the power to program parameters into their website features to advise consumers of such recordation practices.

Consumers are increasingly interacting with Internet chats to ask questions that they otherwise would be asking over the telephone, which saves both consumers and companies time and resources. This is certainly a good thing, so long as the evolution of such technology and consumer communication habits do not result in an erosion of their privacy rights due purely from the happenstance of how they engage in such communications. From a common-sense perspective, the privacy interests are identical, because the communications are identical in both content and nature.

A core feature of the California Invasion of Privacy Act is that the California Legislature specifically codified an intention that it be broadly construed in favor of consumer privacy:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

Cal. Penal Code § 630. The statute envisions evolving technology, new ways companies may invade consumer privacy of "communications" (not telephone calls) through evolving means. This is the broad policy goal of CIPA which governs its application to what types of technology are covered by the statute, what types of communications are considered confidential, and the clear guidepost for this foundational bedrock is the reasonable consumer of times in which the law is applied. The plain language of § 632 envisions a broad swath of technological means by which communications may be recorded, by prohibiting the recordation of any confidential communication "by means of a telegraph, telephone, **or other device**, except a radio."  Cal. Penal Code § 632(a) (emphasis added). The Legislature in codifying the prohibition on such recordation limited its exclusions of what constitutes a confidential communication:

> 'confidential communication' means **any communication** carried on in circumstances as **may reasonably indicate that any party to the communication desires it to be confined to the parties thereto**, but excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open

1
2

to the public, or in **any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded**.

3

Cal. Penal Code § 632 (emphasis added). Under this plain language, the only legal question is

4

whether an objective reasonable consumer would expect their customer service communication

5

with Amazon via the chat feature would not be overheard or recorded.

6

The law has drawn lines on the question of reasonableness all over but has never squarely

7

addressed the issue in this context. For context, the starting point of the analysis is *Kearny*, where

8

the Supreme Court unanimously observed that consumers have such an expectation of privacy for

9

customer service telephone calls. 39 Cal. 4th at 118 fn. 10. The Court went on to hold: "this provision

10

does not absolutely preclude a party to a telephone conversation from recording the conversation,

11

but rather simply prohibits such a party from secretly or surreptitiously recording the conversation,

12

that is, from recording t^he conversation without "irst informing all parties to the conversation that

13

the conversation is bein^g recorded." *Id*. at 117-118. Class actions have been certified on this

14

proposition. *See Raffin v. Medicredit, Inc.*, 2017 WL 131745, at *7-9 (C.D. Cal. Jan 3, 2017); *Zaklit*

15

*v. Nationstar Mortgage LLC*, 2017 WL 3174901, at *5 (C.D. Cal. July 24, 2017).

16

The California Supreme Court recently spoke to its test for determining confidentiality:

17
18
19
20
21
22
23
24
25

In *Flanagan*, we resolved a split of authority regarding what amounts to a 'confidential communication' that section 632, subdivision (a) protects from recording without the parties' consent. We agreed with the view that 'a conversation is confidential if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded' and rejected an alternative interpretation of the statutory language that we considered less protective of the parties' privacy. In so holding, we emphasized that the preferred interpretation was more consistent with the protections conferred by sections 632.5, 632.6, and 632.7. These other provisions, we observed, all 'protect against interception or recording of any communication. When the Legislature determined that there was no practical means of protecting cordless and cellular phone conversations from accidental eavesdropping, it chose to protect all such conversations from malicious or intentional eavesdropping or recording, rather than protecting only conversations where a party wanted to keep the content secret.' We later added, 'Under the construction adopted here, the Invasion of Privacy Act is a coherent statutory scheme. It protects against intentional, nonconsensual recording of telephone

26
27
28

1      conversations regardless of the content of the conversation or the type of telephone

2      involved.'

3    *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 193 (2021). The Supreme Court went on to broadly interpret

4    Cal. Penal Code § 632.7. In *Ribas v. Clark*, 38 Cal. 3d 355 (1985), the Supreme Court held that the

5    CIPA's prohibition on non-consensual monitoring applies not only to interception while a telephone

6    communication is in transit, but also to monitoring on an extension phone. In *Flanagan*, the

7    Supreme Court explained that § 632 protects from non-consensual recording any telephone call that

8    a participant does not intend to be overheard or recorded (whether or not the content of the call is

9    intended to remain secret) and that § 632.7 protects against intercepting or recording "any

10   communication" involving a cellular phone or cordless phone. *Flanagan*, 27 Cal. 4th at 776. In

11   *Kearney*, the Supreme Court affirmed the all-party consent requirement and held that it applies to

12   out-of-state businesses that engage in telephone communications with California customers.

13   Recording a protected communication without the consent of any party has been held to be "an

14   affront to human dignity." *Friddle*, 16 Cal. App. 4th at 1660-61. The consistent theme throughout

15   decades of law is a very broad reading and application of technology and communications.

16        The question remaining is how to interpret the requirement of confidentiality. A

17   conversation is confidential, under CIPA, if a party to that conversation has an objectively

18   reasonable expectation that the conversation is not being overheard or recorded.   *Mezger v. Bick*,

19   280 Cal. App. 5th 76, 89 (2021). Section 632 protects both sound-based and symbol-based

20   communications. *People v. Drennan*, 84 Cal. App. 4th 1349, 1355-56 (2000). Whether a

21   communication is confidential turns on the reasonable expectations of parties judged by objective

22   standard and not by the subjective assumptions of the parties. *Deteresa v. ABC*, 121 F.3d 460, 463

23   (9th Cir. 1997). Even the "presence of others does not necessarily make an expectation of privacy

24   objectively unreasonable[.]" *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214

25   F. Supp. 3d 808, 841 (N.D. Cal. 2016).

26        The case law on the topic seems to be split between conversations which are public in nature

27   vs. private in nature (i.e., whether the conversation is overheard), as well as conversations which

28   consumers generally understand by default are recorded, vs. those which consumers do not

1   inherently have such an understanding. For instance, a closed loop telephone communication is

2   inherently private, and not by default recorded, and so that falls on the side of confidentiality.

3   *Kearney*, 39 Cal. 4th at 118 fn. 10. A teacher's classroom teaching in front of an entire class if

4   recorded by a student, is not confidential because the conversation is being overheard. *Evens v.*

5   *Superior Court*, 77 Cal. App. 4th 320, 323-24 (1999). Users of a social networking website whose

6   healthcare-related information and patient communications were collected by website's owner

7   using computer code installed on third-party websites, had an objectively reasonable expectation of

8   privacy as to those communications. *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218 (N.D.

9   Cal .2022). The reason for this ruling is because people do not inherently have an understanding

10  that their private web communications are subject to such tracking and recordation. On the other

11  hand, private email messages do not carry an expectation of privacy because the party sending the

12  message, in light of their basic knowledge of how email and message communications work, are

13  aware when sending the messages that a recorded copy will be retained by the recipient. *Campbell*

14  *v. Facebook Inc.*, 77 F.Supp.3d 836 (N.D. Cal. 2014).[5] The same is true, as argued by Defendant,

15  with fax messages and text messages.

16      Emails, text messages, and fax transmissions are the three examples given by Amazon in

17  support of their position regarding confidentiality; however, these are not analogous forms of

18  communication to the case at bar.[6] All three of these forms of communications are well understood

19

20  [5] Amazon's citation to dicta from *LoanMe* is not only inapplicable, but was made in a completely
    different context not at issue here. *see* Mtn. at 15. *LoanMe* was undersigned counsel's case. This
21  issue was not briefed, and the case concerned § 632.7 relating to telephone calls, not § 632 relating
    to chat communications, so there was no instance by which the Supreme Court was asked to look
22  at issues like this in issuing its decision.

23  [6] The Court should decline to follow the cases relied upon by Amazon as they involve emails. *See*
    Mtn. at 11-14. *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) (emails); *In re*
24  *Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 U.S. Dist. LEXIS 172784, at *6 (N.D.
    Cal. Sep. 26, 2013) (emails). *TBG Ins. Servs. Corp. v. Super. Ct.* is a case from 2002 when live
25  chats did not exist. 96 Cal. App. 4th 443, 452 n.8 (2002). It also involved emails. *Id. Swarts v. Home*
    *Depot, Inc.*, No. 23-cv-0995-JST, 2023 U.S. Dist. LEXIS 153477 (N.D. Cal. Aug. 30, 2023) while
26  factually analogous, is being appealed by undersigned counsel. This Court should independently
    analyze the issue and give limited weight to the decision, as it does not follow the remainder of
27  authority on this topic.

28

1   by consumers to inherently and by axiom carry a recordation. A text message is transmitted by a

2   telephone carrier, who maintains a copy of the text message's contents, as does the recipient, and

3   anybody who has ever received a text message understands this to be the case. Therefore, a

4   consumer understands that a text message is being "recorded" and therefore is not confidential. The

5   same is true with respect to emails. Emails are maintained in the inbox of the recipient and recorded

6   therein by the email server of the recipient's provider. They too are understood to be recorded and

7   therefore are not confidential. Faxes are no different. A fax machine retains a recorded copy of all

8   faxes sent to its number, and prints a copy. That is why such communications are not confidential.

9           As noted (*see supra* at 18 n.6), the Court should decline to follow the cases relied upon by

10  Amazon. Amazon relies heavily on *People v. Nakai*, 183 Cal. App. 4th 499 (2010). In declining to

11  follow *Nakai*, and instead, following *Flanagan*, the Northern District of California denied the

12  defendant's motion for summary judgement in an action concerning whether online "browsing

13  information" was confidential under Section 632. *Brown v. Google LLC*, No. 4:20-cv-3664-YGR,

14  2023 U.S. Dist. LEXIS 139895, at *7, 46-47 (N.D. Cal. Aug. 7, 2023). The Court distinguished

15  *Nakai* sating, "Times change, as do modes of communication. What may have been a reasonable

16  expectation in 2006 when *Nakai* was decided is not necessarily so in 2023." *Id.* at *47. The court

17  pointed out that *Nakia* is limited to the facts of that case:

18          [*Nakai*] determined that a criminal defendant did not have a reasonable expectation
            of privacy over his sexually explicit chats, shared over a Yahoo! Chatroom, with a
19          minor. It did so because: Yahoo!'s Privacy Policy indicated that chat dialogues could
            be shared to investigate or prevent illegal activity; Yahoo! warned users that chats
20          could be archived; defendant was communicating online with a person he did not
            know in real life (and who turned out not to be a minor at all); and defendant had
21          expressed during the chats a fear that someone would overhear, suggesting he knew
            that the communications could be intercepted.
22

23  *Id.* at *46-47.

24          In *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848–49 (N.D. Cal. 2014) (Facebook

25  chats not "confidential" under Section 632), the Ninth Circuit later noted that the plaintiff's

26  allegations concerning CIPA violations for capturing website links were actionable recognizing

27  "Facebook's failed attempts to convince the district court to dismiss the case or deny class

28  certification." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1111 (9th Cir. 2020). Notably different

is that Facebook chat messages remain both in the inbox of the recipient, and the outbox of the sender for an extended period of time, meaning that both users have an understanding that these chats are being recorded as they can be accessed by the consumer after the fact. This is distinguishable from online chats with a chatbot on a website. Amazon's online chat system does not appear to allow a consumer to access historic chats in the same way an inbox for emails or text messages may retain similar copies, and thus there can be no presumption of recordation inferred by consumers.

Quigley v. Yelp, Inc., 2018 WL 7204066 (N.D. Cal. Jan. 22, 2018), relied upon by Amazon, predated Javier and In re Facebook Inc. Internet Tracking Litig. and relied on a principle which the Ninth Circuit later rejected – that online electronic communications cannot be subject to CIPA protection. Given the developments in the law since that time, and Quigley's categorical declination to hold that CIPA covers such claims, Plaintiff does not believe the decision is good law. Defendant relies on Faulkner v. ADT Sec. Services, Inc., 706 F.3d 1017 (9th Cir. 2013), but the case's fact pattern has nothing in common with the case at hand. The plaintiff alleged a CIPA violation based on a telephone call in which the defendant informed him both through an explicit advisement and beep tones that the call was being recorded, and even informed him if he did not want to participate in a telephone call that was being recorded then he should simply hang up because the company recorded its calls.

Finally, Amazon cites to Revitch v. New Moosejaw, LLC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) for the position that online communications not "confidential" where "[n]othing about the[] particular internet communications—inquiring about items of clothing on a retail website—warrants a deviation from th[e] general rule." Again, Plaintiff points to Javier and In re Facebook Inc. Internet Tracking Litig. which hold that online communications may be subject to CIPA protection, and also to California Supreme Court authority, including Flanagan v. Flanagan, 27 Cal. 4th at 775 which holds that the correct standard for confidentiality is based on the Fourth Amendment's reasonable expectation of privacy standard, not on the content of the communication. Revitch assumed that online communications were per se precluded from CIPA protection, which is no longer the standard, and so that decision also is no longer good law. The overarching takeaway

1  is that this is a novel issue that must be fit within existing California Supreme Court authority on

2  the appropriate legal standards, with the stated statutory purpose set forth under Penal Code § 630

3  in mind.

4       Chat transcripts have no such technological mandate that is understood by consumers,

5  because consumers do not interact on the back end of websites in the same way as they receive

6  emails, texts, and faxes. They do not know how websites work. They do not know whether websites

7  store or record copies of the communications. And they cannot be expected to know, because the

8  truth is that some websites record chat transcripts, and others do not. How could a consumer

9  possibly be on notice under such circumstances by default if they have no everyday interaction with

10  the software, and if the software is capable of both recordation and a lack thereof? Amazon's

11  position—that by default people should be held to know chat transcripts are recorded—is lazy.

12  Amazon chose and continues to choose not to tell people that it records the conversations and

13  inform consumers. Now Amazon, a company that interacts with most members of the public in

14  some way, wants a free pass on a privacy invasion that is distinct from all of the examples it cites

15  to as support.

16       This is a novel fact pattern, but the facts strongly support the recordation of a chat transcript

17  should be likened to a telephone call, not to an email. And thus, it should be treated with the same

18  expectation of privacy that the California Supreme Court affords consumers with telephonic

19  customer service interactions. If Amazon wishes to avail itself of immunity from CIPA, it need only

20  undertake the minimal effort of adding a disclaimer to its chat feature.[7]

21  **3. Amazon Intentionally Recorded Heinz's Chat Transcripts**

22       There is no doubt Amazon intentionally recorded Heinz's chat conversations. Amazon

23  programmed its own website, and hired the software engineers to design these parameters into its

24  functionality. Amazon does not dispute this, but rather hinges its position on a misinterpretation of

25  the requirements of willfulness under the law. The legal question as to whether communications

26

27  [7] Plaintiff recently requested Amazon place a simple notification at the outset of the chat conversations to inform consumers the conversations are recorded by Amazon. Straub Decl., ¶ 4. Amazon declined the request. *Id.*

28

1   are confidential is inconsequential to the determination of whether the conduct was intentional. The

2   recording of a confidential conversation is intentional "if the person using the recording equipment

3   does so with the purpose or desire of recording a confidential conversation, or with the knowledge

4   to a substantial certainty that his use of the equipment will result in the recordation of a confidential

5   conversation." *People v. Super. Ct. (Smith)*, 70 Cal. 2d 123, 134 (1969).

6        It is facially implausible for Amazon to have unintentionally recorded Heinz's chats, and

7   the chats with other consumers, after it purchased/programmed and implemented software to do so.

8        **C. Heinz's UCL Unlawful Prong Claim for Injunctive Relief Should be Upheld**

9        Amazon's Motion conflates the proper legal standards for standing under the UCL. *See* Mtn.

10  at 18-19. Amazon claims that the data it records without consumers knowledge has no value, and

11  therefore, Heinz has not lost anything of value. However, there are "innumerable ways in which

12  economic injury from unfair competition may be shown." *Kwikset Corp. v. Superior Ct.*, 51 Cal.

13  4th 310, 323 (2011). An invasion of privacy constitutes economic injury: "the Ninth Circuit and a

14  number of district courts, including this Court, have concluded that plaintiffs who suffered a loss

15  of their personal information suffered economic injury and had standing." *Calhoun v. Google LLC*,

16  526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) (collecting cases). Heinz and putative class members

17  "have provided valuable data to [Defendant] and have received *no* money in return." *Brown v.*

18  *Google LLC*, 2021 U.S. Dist. LEXIS 244695, at *52 (N.D. Cal. Dec. 22, 2021) (collecting cases);

19  *Klein v. Facebook, Inc.,* 580 F. Supp. 3d 743, 803 (N.D. Cal. 2022) ("[B]y providing Facebook

20  with their information and attention, they 'lost money or property.'"). Indeed, in case heavily relied

21  upon by Amazon, *In re Google Inc. Gmail Litig.*, 2013 U.S. Dist. LEXIS 172784, the court held

22  that an invasion of privacy constitutes injury: "All Plaintiffs need allege is an invasion of statutory

23  CIPA rights to survive a motion to dismiss on standing grounds." *Id.* at *6.

24       Amazon argues there is no claim under the UCL's "unlawful" prong. Mtn. at 18. As

25  explained above, Heinz plausibly alleges violations of CIPA. Because virtually any law or

26  regulation can serve as a predicate for a UCL "unlawful" violation. FAC, ¶ 56; *Klein v. Chevron*

27  *U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

28       Last, Amazon argues Heinz' allegations are insufficient under the UCL's "unfair" prong.

1    Mtn. at 18-19. "Unfair" conduct includes balancing the harm of Amazon's actions against its

2    reasons and motives. *See Nationwide Biweekly Admin., Inc. v. Superior Court*, 9 Cal. 5th 279, 303

3    n.10 (2020). "Unfair" conduct also includes a violation of public policy. *Id.* Heinz alleges Amazon's

4    actions of secretly recording conversations with its customers is "'unfair' because they violate

5    California's public policy to protect California consumers' privacy." FAC, ¶ 58. "California clearly

6    has an interest in protecting the privacy of conversations of California residents while they are in

7    California." FAC, ¶ 14 (citing *Kearney*, 39 Cal. 4th at 104). Further, the utility of Amazon's secret

8    recording is outweighed by the privacy interests of Californians. FAC, ¶ 58. Amazon's attempt to

9    require Heinz to allege an antitrust violation should be rejected.

## IV.    CONCLUSION

The Court should deny Amazon's Motion to dismiss. If the Court grants any aspect of

Amazon's Motion, Heinz requests leave to amend. *See* Fed. R. Civ. P. 15(a).

Dated: October 4, 2023                    Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN, P.C.

By: _/s/    Adrian R. Bacon_____
ADRIAN R. BACON

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Meghan E. George (SBN 274525)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
mgeorge@toddflaw.com

Craig Straub (SBN 249032)
Zachary M. Crosner (SBN 272295)
**CROSNER LEGAL, P.C.**
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
craig@crosnerlegal.com
zach@crosnerlegal.com

*Attorneys for Plaintiff, and all others similarly situated*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>Local Civil Rule 7(e) Certification</u>**

I certify that this memorandum contains 8,377 words (including footnotes), in compliance with the Local Civil Rules.

By: _/s/ __Adrian R. Bacon_____
ADRIAN R. BACON